IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**JORDAN JONES**, **ROBERT LEMUS**, )
**JASON REED**, individually and on behalf )
of all others similarly situated, )
                                                       )
        Plaintiffs, )
                                                       )
   v. )        2:18cv282
                                                       ) Electronic Filing
**GIANT EAGLE, INC.**, )
                                                       )
        Defendant. )

-----------------------------------------------------

**ANDREW FITCH, RICHARD** )
**D'ALESSANDRO, MICHAELLE** )
**HUTCHINSON**, individually and on )
behalf of all others similarly situated, )
                                                       )
        Plaintiffs, )
                                                       )
   v. )        2:18cv1534
                                                       ) Electronic Filing
**GIANT EAGLE, INC.**, )
                                                       )
        Defendant. )

## **OPINION**

Jordan Jones ("Jones"), Andrew Fitch ("Fitch") and others (collectively "plaintiffs") have commenced these separate collective actions against Giant Eagle, Inc. ("Giant Eagle" or "defendant"), seeking to recover unpaid overtime for themselves and, under § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), on behalf of all others similarly situated. Plaintiffs also advance claims under the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq*. ("PMWA") and the Ohio Minimum Fair Wage Standards Act, O.R.C §§ 4111.01, *et seq*. ("OMFWSA"). Jones' collective action ("Jones v. Giant Eagle," 2:18-cv-282 or "the Jones action") seeks overtime pay on behalf of current and former Team Leaders and Team

Leader Trainees employed in defendant's Giant Eagle stores. Fitch's collective action ("Fitch v. Giant Eagle," 2:18-cv-1534 or "the Fitch action") seeks overtime pay on behalf of current and former Senior Team Leaders and Senior Team Leader Trainees employed in defendant's GetGo retail convenience stores/gas stations. Presently before the court are defendant's "objections" to Magistrate Judge Cynthia Reed Eddy's January 2, 2019, orders granting plaintiffs' motions for equitable tolling of the statute of limitations for potential opt-in plaintiffs. Defendant's objections are in effect motions for reconsideration of those orders and the court has examined them in each posture and determined that the outcome is the same under either approach. In light of this and for the reasons set forth below, Judge Eddy's January 2, 2019, orders will be affirmed on appeal and/or reimposed after reconsideration and the statute of limitations for any putative opt-in plaintiffs in each action will be tolled until fourteen (14) days following this court's decision on defendant's motion to dismiss the amended complaint in each action.

The Jones action was commenced in this court on March 6, 2018. Andrew Fitch filed a notice opting into the Jones action on April 3, 2018. He thereafter filed a notice withdrawing his consent and filed the Fitch action in the Southern District of Indiana on April 23, 2018. That action remained pending there until it was transferred to this court on November 9, 2018. Fitch v. Giant Eagle, Inc., 2:18-cv-1534 (Doc. No.s 1, 50). Both actions have been pending now for approximately a year and a half.

During the pendency of these actions a significant amount of time has been consumed through extended motions practice. In both actions, plaintiffs' original complaints were met with motions to dismiss (in this court and in the Southern District of Indiana), which were followed by the filing of amended complaints and then motions to dismiss the amended complaints.

On May 15, 2018, defendant filed a motion with the United States Judicial Panel on Multidistrict Litigation seeking to coordinate and consolidate the Fitch action with the Jones

2

action for pretrial proceedings and concomitantly transfer the Fitch action to this court. On August 1, 2018, defendant filed a notice of the denial of its motion to transfer pursuant to 28 U.S.C. § 1407.

On June 5, 2018, defendant filed a motion to transfer pursuant 28 U.S.C. § 1404(a) in the Fitch action. Upon notice of doing so the Jones action was stayed and statistically closed pending a decision on the motion to transfer. The § 1404(a) transfer motion remained pending for over six months. The parties then entered into a joint stipulation to transfer, which was granted on November 9, 2018. The transfer noted above followed.

Highlighting the deleterious effect of the continued running of the statute of limitations as to potential opt-in plaintiffs and the concomitant need to provide them with timely notice of their claims, plaintiffs sought equitable tolling in Jones on September 14, 2018. On October 10, 2018, Judge Eddy granted the request for tolling "from May 15, 2018 until fourteen (14) days after the Southern District of Indiana decides Defendant's pending motion to transfer venue." (Order of October 10, 2018, in 2:18cv282 (Doc. No. 49)). Defendant filed "objections" to that order and this member of the court affirmed Judge Eddy's order on November 23, 2018.

Judge Eddy held a status conference with counsel on December 4, 2018. See Doc. No. 57 in 2:18cv282. At the conference the procedure for further development of the parties' competing interests – that being the filing and briefing on defendant's motions to dismiss and plaintiffs obtaining equitable tolling in both cases – was formulated. The procedural deadlines indicated time would be consumed through March 8, 2019, before the court would be in a position to even consider defendant's motions to dismiss.

On December 7, 2018, plaintiffs filed a First Amended Complaint in each action. On December 28, 2018, they filed a motion to lift the stay and extend the period of equitable tolling in Jones and a motion for equitable tolling in Fitch.

3

On January 2, 2019, Judge Eddy granted continued tolling in <u>Jones</u> and initial equitable tolling in <u>Fitch</u>. The tolling was continued/imposed "until fourteen (14) days following [this court's] decision on Defendants' anticipated motion[s] to dismiss [in both actions]." 2:18cv282 at Doc. No. 60; 2:18cv1534 at Doc. No. 56. Defendant's pending objections/motions for reconsideration followed.

Defendant's arguments against equitable tolling essentially are twofold. First, it contends that the predicate underlying the initial period of tolling in <u>Jones</u> – *i.e.*, defendant's then-pending § 1404(a) motion to transfer – no longer exists. Second, from its perspective the requisite showing of "extraordinary" circumstances needed for equitable tolling has not been made. Plaintiffs maintain that ample grounds for tolling are present and Judge Eddy reached the correct resolution.

Defendant's arguments seeking to undo Judge Eddy's decision to grant equitable tolling are unavailing. As an initial matter, Judge Eddy's memorandum order ("the order") applying equitable tolling was founded on much more than the mere pendency of the transfer motion. It was predicated on "the procedural posture of this case."

The procedural posture of the case presented and Judge Eddy's order identified sufficient grounds for equitable tolling. The basic rationale of the order was that "it is within the interests of justice to apply the doctrine of equitable tolling in this matter." (Doc. No. 49 at 1-2). At the time the order was entered "the procedural posture of [the] case" presented significant circumstances to be considered in reaching that conclusion. <u>Id.</u> Among other things they included: (1) the prior entry of an indefinite stay of the proceedings pending resolution of the transfer motion by another district court; (2) the fact that at that juncture the proceedings had not even addressed, much less determined, the issue of providing notice to putative members of the collective; and (3) the potential (indeed the likelihood) that defendant would renew its motion to

dismiss, thereby "further prolonging the time by which notice of this action will be given to the putative collective." Id. at 2.[1]

Against this background, Judge Eddy weighed the equities presented by these circumstances. In doing so she determined that by granting equitable tolling the putative opt-in claimants would be protected and defendant would not be prejudiced. Her rationale drew support from and relied on numerous authorities, including the Supreme Court's decision in Hoffmann-LaRoche Inc. v. Sperling, 493 U.S. 165 (1989). It was for all of these reasons that Judge Eddy found tolling to be "within the interests of justice." Id.

And those principles and reasons continued with sufficient force on January 2, 2019. Nothing within the balancing of the equitable principles had meaningfully changed or abated at that juncture.

Defendant's contention that the records lack sufficient grounds to warrant equitable tolling equally is wide of the mark. In this regard we decline defendant's invitation to embark on a foray into an allocation of fault for each event which has contributed to the present "procedural posture" of these actions. Such an allocation misses the forest for the trees.

Defendant's assault on the application of equitable tolling is predicated on two fundamentally flawed premises. The first is that Congress expressly chose to foreclose the use of

---

[1] In addition to the hurdles presented by these circumstances, the further procedural steps that must be accomplished before the statute of limitations begins to toll for opt-in plaintiffs are in themselves necessarily time-consuming. As a general matter, the parties must be given an opportunity to engage in pre-certification discovery; the named plaintiffs must move for and brief conditional certification; the opposing parties must be given sufficient time to respond; and the court must consider the entire matter and make a decision on the scope of conditional certification. After these steps, the parties must either agree on the substance and form of notice or the court must adjudicate this aspect of their dispute as well. After this process the approved notice must be sent to the potential opt-ins. Then, the potential opt-ins must review, complete and return their consent forms to the plaintiff's counsel, who must file them with the court.

5

the doctrine in a § 216(b) collective. The second is that these cases "are proceeding in precisely ordinary fashion" and from a procedural point of view present nothing more than "paradigmatically-ordinary" case development.

Defendant relies on Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178 (M.D. Pa. 2008), and Adami v. Cardo Windows, 299 F.R.D. 68 (D. N.J. 2014), to support its contention that equitable tolling is inconsistent with the statutory scheme chosen by Congress in enacting the FLSA. (Doc. 63 at 5.). It is of course accurate to say that the opt-in scheme enacted does not expressly provide for automatic tolling during the time that will be consumed from the filing of the complaint through the providing of notice and an opportunity for potential plaintiffs to join the collective.[2] And it also is an accurate assessment that the doctrine of equitable tolling is not to be employed as a matter of course and is to be used only sparingly. But there is nothing in the text of the FLSA indicating that Congress intended to foreclose courts from equitably tolling its statute of limitations where the circumstances so warrant. See Depalma v. Scotts Company, LLC, 2017 WL 1243134 *4 (D. N.J. Jan. 20, 2017) (the troublesome 1940's-era practice sought to be eliminated by Congress in creating § 216(b)'s opt-in procedure provides no insight into whether equitable tolling was even considered at the time and Congress stopped far short of precluding the application of the judicially created doctrine under appropriate circumstances).

---

[2] Under the FLSA, a plaintiff's claim to recover unpaid overtime compensation must be commenced within two years of the alleged violation (i.e., the accrual of the cause of action) – unless the violation is willful, in which case the limitations period is enlarged to three years. 29 U.S.C. § 255(a). A named plaintiff's claim commences "on the date when the complaint is filed," whereas an opt-in plaintiff's claim only commences "on the subsequent date on which [the opt-in plaintiff's] written consent is filed." 29 U.S.C. § 256(a)-(b). Thus, the FLSA's statute of limitations effectively is tolled for all named plaintiffs' claims upon filing the complaint, but it continues to run for opt-in plaintiffs until their written consents are filed with the court.

6

Moreover, defendant's reliance on Woodard and Adami is unavailing. It is well-settled that the doctrine of equitable tolling is read into every federal statute of limitations, including the FLSA. See Genarie v. PRD Mgmt., 2006 WL 436733, *15 (D. N.J. Feb. 17, 2006). Indeed, the very purpose of the statute and the court's responsibilities in adjudicating cases presenting § 216(b) collective claims lend persuasive support for the proposition that it would be ill advised to discard the doctrine based on the concept of *expressio unius est exclusio alterius* where there is a complete lack of textual support and otherwise no congressional mandate to do so.[3]

As the Third Circuit has observed, the FLSA "is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted." Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987) (cited in Sec'y United States DOL v. Am. Future Sys., 873 F.3d 420, 426 (3d Cir. 2017). And as the Supreme Court opined in Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123,

> these provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

321 U.S. 590, 597 (1944).

It is against this backdrop that the text embodied in the FLSA must be construed. And neither the practices that led to the enactment of § 216(b) nor the text employed therein lend sound support for the notion that Congress intended to eliminate or otherwise displace the doctrine of equitable tolling where its application would otherwise be appropriate.

---

[3] This "canon of construction" has long been recognized as a fallacy of logic that is premised on the idea of legislative omniscience; and it most often is used in support of a post hoc realization. See Black's Law Dictionary (quoting Reed Dickson, The Interpretation and Application of Statutes 234-35 (1975) and Richard A. Posner, The Federal Courts: Crisis and Reform 282 (1985)).

Furthermore, the court's obligation in administering a § 216(b) collective lends support to the proposition that the doctrine remains an available judicial tool to be employed where warranted. A district court's obligation to administer a § 216(b) action in a manner that promptly resolves its collective component has long been recognized. In Hoffmann-LaRoche, the Court proclaimed: in passing § 216(b), "Congress has stated its policy that . . . plaintiffs should have the opportunity to proceed collectively." Hoffman-LaRoche, 493 U.S. at 170.[4] The Court specifically recognized two significant benefits Congress sought to realize through its policy of authorizing collective actions: (1) the benefits to plaintiffs through the pooling of resources and lower individual costs to vindicate their rights and (2) the benefits to the judicial system through efficient resolution in a single proceeding of common issues of law and fact arising from the same alleged activity. Id.

As particularly relevant to the issue of equitable tolling presented here, the Court recognized that these central benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id. The significance that timely notice has on effectuating these benefits in the statutory scheme was made apparent when the Court further emphasized:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. See Fed. Rule Civ. Proc. 83. It follows that, once a [collective] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

Id. at 170-71.

---

[4] The collective action in Hoffmann-LaRoche was brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). The ADEA incorporates the collective action provision, 29 U.S.C. § 216(b), of the Fair Labor Standards Act of 1938. See 29 U.S.C. § 626(b).

8

Pursuant to Hoffmann-LaRoche, district courts have a managerial responsibility to oversee the certification process in an efficient and proper manner in order to ensure that potential class members receive "timely notice concerning the pendency of the collective action." Id. Indeed, the Court expressly held that "district courts have discretion" in collective actions "to implement [§ 216(b)] by facilitating notice to potential plaintiffs" in order to carry out that managerial responsibility. Id. at 169.

Subsumed within the court's managerial responsibility is the ability to manage the certification process in a manner that does not frustrate the very purposes of the statute. It would be an odd proposition indeed to deem Congress to have delegated such responsibility to the courts and then to have stripped them of the various settled judicial doctrines that are needed from time to time to manage the circumstances that might interfere with that responsibility – all by the mere absence of language sanctioning the use of such doctrines. We decline to embark on defendant's invitation to embrace such an approach.

In the instant collective actions, it is clear that sound execution of this court's managerial responsibility to ensure timely notice requires some measure of equitable tolling. We are unpersuaded by defendant's insistence that only the three scenarios generally recognized as "extraordinary" grounds for equitable tolling provide appropriate grounds for such relief in the instant context. See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3rd Cir. 1994) (articulating the three situations as: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum"). This is because the court has never held these three situations to be exhaustive, no doubt because the application of tolling is based on principles of equity and considerations of fairness and cannot easily be reduced to a

set of precise rules in an enumerated list.  See, e.g., Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (recognizing that there may be situations where equitable tolling "is demanded by sound legal principles as well as the interests of justice") (internal citations omitted); accord Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 618 (3d Cir. 1998) (recognizing that equitable tolling is proper "when the 'principles of equity would make [the] rigid application [of a statute of limitation period] unfair'") (internal citations omitted).

As noted above, Congress did not intend for the statute of limitations to be tolled as a matter of course in § 216(b) collective actions.  But where, as here, extensive proceedings and the resolution of preliminary matters have rendered the opt-in plaintiffs' claims "particularly vulnerable to the continued running of the statute of limitations while motions for conditional certification and [court-authorized Hoffmann-LaRoche] notice remain undecided," the application of equitable tolling may well be appropriate.  Depalma, 2017 WL 1243134 at *2.

And in considering its application we likewise are unwilling to parse through each event in the record in search of fault and blame for the inordinate delay that has occurred to date. Such a focus misses the relevant inquiry.  As Judge McNulty aptly observed:

> I view the matter from the opt-ins' point of view.  As the motion remained sub judice before me, they had not received notice, for reasons perhaps attributable to plaintiffs, [defendants], or me, but anyway having nothing to do with them.  From their point of view, allocation of fault for the delay among the named plaintiffs, [defendants], and the court is simply irrelevant.  As it happens, a substantial part of the delay in the motion's hitting the court's decision calendar resulted from plaintiffs' need to refile certain exhibits; thereafter, some seven months passed before I granted the certification motion; but no part of the delay is attributable to the potential opt-in plaintiffs, who had not received notice of this lawsuit but nevertheless were in jeopardy of losing their claims.

Depalma, 2017 WL 1243134, at *7.  We too believe that the inquiry should be based on whether 1) there has been extraordinary delay in administering the certification process and 2) the contemplated opt-in parties have been deprived of the ability to make informed decisions about their potential rights through no fault of their own.

10

To be sure, counsel for both parties have not engaged in a course of conduct that exemplifies the degree of civility and professional courtesy that is needed to move their clients' respective cases toward the fulfillment of this court's mission statement: "to preserve and enhance the rule of law while providing an impartial and accessible forum for the just, timely, and economical resolution of legal proceedings within the court's jurisdiction . . . . " And counsel on each side is quick to assert that each step or responsive move on their part was appropriate in its entirety under prevailing standards and norms.

But whatever else can be said about the course that has unfolded, it is clear that this court has come up short in expediently reaching the point where the collective component of these cases can be resolved and determinations can be made about whether, and if so how, opt-in claimants should receive notice of their right to join the collective. It is the existence of this state affairs over a prolonged period of time that tips the balancing of the circumstances and the equities of the cases in favor of tolling. This is particularly so here where defendant has been on notice from the start that the actions are brought as § 216(b) collectives and it has failed to identify any prejudice that will result beyond the mere shield that the limitations period potentially could provide.

Given the circumstances presented in these specific collective actions we harbor no reservations in concluding that Judge Eddy correctly determined that equitable tolling should be applied. We thus will affirm and/or reimpose on reconsideration the ruling that the statute of limitations for any putative opt-in plaintiffs in each action will be tolled until fourteen (14) days following this court's decision on defendant's motion to dismiss the amended complaint in each

action.  An appropriate order will follow.

Date: September 30, 2019

                                                       s/David Stewart Cercone
                                                       David Stewart Cercone
                                                       Senior United States District Judge

cc:     The Honorable Cynthia Reed Eddy,
          United States Magistrate Judge

          Daniel C. Levin, Esquire
          Jason Conway, Esquire
          Camar R. Jones, Esquire
          Gregg I. Shavitz, Esquire
          Logan A. Pardell, Esquire
          Michael J. Palitz, Esquire
          Bernard D. Marcus, Esquire
          Brian C. Hill, Esquire
          Erin G. Allen, Esquire
          Jonathan D. Marcus, Esquire
          Joshua Kobrin, Esquire
          Robert M. Barnes, Esquire

          (*Via CM/ECF Electronic Mail*)