**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREW FITCH,<br>RICHARD D'ALESSANDRO, and<br>MICHAELLE HUTCHISON, individually<br>and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GIANT EAGLE, INC., d/b/a GETGO CAFÉ<br>+ MARKET, | ) ) ) | |
| Defendant. | ) ) | Consolidated Civil Action No.<br>2:18-cv-01534-DSC-CRE |
| JORDAN JONES,<br>ROBERT LEMUS, and<br>JASON REED, individually and on behalf of<br>all other similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GIANT EAGLE, INC. | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ....................................................................................................................... 5

   A.   General Standard of Review ..................................................................... 5

   B.   The Executive Exemption to the FLSA ................................................... 5

   C.   Giant Eagle's Classification of All its Salaried Team Leaders was Proper
       as a Matter of Law ................................................................................. 11

   D.   Plaintiffs' Attempts to Call this Conclusion into Question Fail as a Matter of Law ..... 11

   E.   Various Specific Plaintiff and Opt-in Deposition Admissions also Require
       Summary Judgment in Certain Individual Cases .................................. 12

       1.   *Amanda Frawley* .......................................................................... 12

       2.   *Samantha Bosma* ......................................................................... 14

       3.   *Danielle Graham-Robinson* ........................................................ 15

       4.   *Heather Gilkey* ............................................................................ 17

       5.   *Andre Christian* ........................................................................... 18

       6.   *Jason Reed* ................................................................................... 18

CONCLUSION .................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**

*Baum v. Astrazeneca LP*, 372 F. App'x 246 (3d Cir. 2010) ........................................................ 6

*Bruni v. City of Pittsburgh*, 941 F.3d 73 (3d Cir. 2019) ........................................................ 5

*Del Valle v. Officemax N. Am.*, 680 F. App'x 51 (3d Cir. 2017) ........................... 6, 7, 8, 9, 10, 12

*Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141 (3d Cir. 1983) ........................................ 6, 8

*Hudson v. Absecon Emergency Servs.*, No. 14-6419 (RMB/AMD),
     2016 U.S. Dist. LEXIS 129602 (D.N.J. Sep. 22, 2016) ...................................................... 6, 7

*Itterly v. Family Dollar Stores, Inc.*, 606 F. App'x 643 (3d Cir. 2015) .................. 6, 7, 8, 9, 10, 12

*Kelly-Myers v. Mercy Health Sys. of Se. Pa.*, No. 16-5194,
     2017 U.S. Dist. LEXIS 160970 (E.D. Pa. Sep. 29, 2017) ........................................................ 6

*Killingsworth v. Potter*, 307 F. App'x 685 (3d Cir. 2009) ........................................................ 5

*Paul v. UPMC Health Sys.*, Civil Action No. 06-1565,
     2009 U.S. Dist. LEXIS 19277 (W.D. Pa. Mar. 10, 2009) ........................................................ 6

*Rosano v. Twp. of Teaneck*, 754 F.3d 177 (3d Cir. 2014) ........................................................ 6

*Simpson v. Prince Telecom, LLC*, Civil Action No. 14-1211-SLR-SRF,
     2017 U.S. Dist. LEXIS 48481 (D. Del. Mar. 31, 2017) .................................................. 6, 8, 10

*Soehnle v. Hess Corp.*, 399 F. App'x 749 (3d Cir. 2010) ........................................................ 8

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir. 2007) .................................... 6

**Statutes**

29 U.S.C. § 207(k) ........................................................................................................ 6

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................... 5

**Regulations**

29 C.F.R. § 541.100(a)................................................................................................. 5, 7

29 C.F.R. § 541.106(a)................................................................................................... 9

29 C.F.R. § 541.700(a)................................................................................................... 8

29 C.F.R. § 541.700(b) .................................................................................................................. 8

29 C.F.R. § 541.700(c) .................................................................................................................. 8

## INTRODUCTION

Plaintiffs have simply targeted the wrong type of manager, in the wrong type of industry, in the wrong Circuit.  In the Third Circuit, Giant Eagle's salaried Team Leaders, as the bona fide managers of their supermarket departments, are exempt from overtime pay, regardless of how much time they spend performing nonexempt work.  And the Plaintiffs' apparent theories as to why a jury could conclude otherwise are erroneous as a matter of law.

The Third Circuit has held that the FLSA's "primary duty" test does not refer to the most time-intensive of an employee's functions, but instead refers to the "principal, main, major or most important" duty performed by the employee.  Here, the record[1] shows that Giant Eagle expects its Team Leaders to manage their departments; they do manage their departments; and Giant Eagle's supermarkets could not function effectively without Team Leaders managing their departments.  Further, individual Plaintiffs admit that they managed their departments.  With this showing, the question on summary judgment is whether Plaintiffs can fairly call into question that Giant Eagle's salaried Team Leaders are exempt managers.  They cannot.

Accordingly, Defendant Giant Eagle, Inc. ("Giant Eagle") moves for summary judgment in the Jones, Lemus, and Reed action ("supermarket action"), pursuant to Federal Rule of Civil Procedure 56.  Giant Eagle seeks judgment on the First, Third, and Fourth Causes of Action in Plaintiffs' Second Amended Complaint, Doc. No. 58,[2] as to all Plaintiffs.  Under Third Circuit

---

[1] Because the relevant documentary and testimonial evidence provided by Giant Eagle was repeatedly confirmed by Plaintiffs' sworn deposition testimony, no more discovery is needed and the record is ripe for this motion.

[2] The First Cause of Action is for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") on behalf of Plaintiffs and other salaried Team Leaders; the Third Cause of Action is for unpaid overtime wages under the Ohio Minimum Wage Act ("OMWA") on behalf of Plaintiff Reed and other salaried Team Leaders in Ohio; and the Fourth Cause of Action is for unpaid overtime wages under the Pennsylvania Minimum Wage Act ("PMWA") on behalf of Plaintiffs Jones and Lemus and other salaried Team Leaders in Pennsylvania.  *See, generally*, Doc. No. 58 at 21-24, 26-29.  The fact that Giant Eagle is not moving for summary judgment at this time as to

law, Plaintiffs cannot fairly dispute that Giant Eagle properly classified its salaried Team Leaders as exempt managers ineligible for overtime pay.[3]   In the alternative, the Court should grant summary judgment for Giant Eagle on the First, Third, and Fourth Causes of Action as to Amanda Frawley, Samantha Bosma, Danielle Graham-Robinson, Heather Gilkey, Andre Christian, and Jason Reed.  Their sworn deposition testimony further compels the conclusion that Giant Eagle properly classified these individuals as exempt managers.[4]

## **STATEMENT OF FACTS**

Giant Eagle's 175 supermarkets come in all shapes and sizes, but they all have a basic leadership structure in common.



.  CSMF at ¶¶1-4.  Salaried Team Leaders are in charge of many of these supermarket departments.  *Id.* at ¶8.

Plaintiffs' action implicitly depends on the notion that these individual departments have no need for daily management below the oversight provided at the Store Leader level.  But the record before the Court—including the sworn depositions of named Plaintiffs and Opt-Ins (collectively "Plaintiffs")—dispels this notion.

---

the Second and Fifth Causes of Action, involving Team Leader trainees, should not be construed as a waiver of Giant Eagle's right to bring such a motion.

[3] Giant Eagle classifies a handful of salaried Team Leaders as exempt administrators.  No such Team Leaders are represented by the named Plaintiffs, and there is no mention of such Team Leaders in the Amended Complaint.  It is unclear if Plaintiffs intend to include such salaried Team Leaders within their collective and class actions allegations.  However, even if so, such claims by administrators would be subject to summary judgment for the same reason: their primary duty is always administrative, and the Plaintiffs cannot fairly call this classification into question.

[4] Giant Eagle's decision to omit other named Plaintiffs from this motion should not be construed as a waiver of its right to file at a later date for individual summary judgment as to those other individuals.  As also reflected in the citations in the associated Concise Statement of Material Facts ("CSMF"), the same types of Plaintiff-specific documentary evidence, such as resumes written by Plaintiffs, disciplinary documents written by Plaintiffs, self-appraisals about management skills and outcomes written by Plaintiffs, and more, also exist for other purported Plaintiffs.

2

████████████████████████████████████████. On this record, there is no genuine

factual basis to dispute that salaried Team Leaders primarily perform critical management duties.

First, Giant Eagle pays <u>some</u> of its Team Leaders a salary, and does not track their hours,

because Giant Eagle classifies its salaried Team Leaders as exempt executives under the FLSA,

and similar state laws. *Id.* at ¶¶9-10, 13.

Second, salaried Team Leaders manage departments within Giant Eagle's supermarkets.

*Id.* at ¶¶5-8, 12. ███████████████████████████████. *Id.* at ¶11. ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████. CSMF at ¶¶22-24, 35.

████████████████████████████████████████████████████████

████████████████. *Id.* at ¶¶19-21. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at ¶¶2-8, 39-50.

████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at ¶¶14,

48. ████████████████████████████████████████████████████████

████████████████. *See, e.g., id.* at ¶¶71-82, 136-137, 146. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████. *Id.* at ¶¶15-17. ████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████ *Id.* at ¶¶18-19.

███████████████████████████████████████████████

█████████████████████████████████████████████████████

████████ . *Id.* at ¶28. ███████████████████████████████

██████ . *Id.* at ¶29. ██████████████████████████████████

██████████████████████████████████████████████ . *Id.* at ¶29.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████ . *Id.* at ¶¶30-31. ██████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████ . *Id.* at ¶31.

███████████████████████████████████████████████

█████████████████████████████████ *Id.* at ¶32. ████████████

█████████████████████████████████████████████████████

████████████████████████████████████ . *Id.* at ¶32.

███████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████ . *Id.* at ¶33. ████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████ . *Id.* at ¶34.

███████████████████████████████████████████████

█████████████████████████████████████████████████████



. *Id.* at ¶36.

*Id.* at ¶37.

.

*Id.* at ¶37.

. *Id.* at ¶37.

. *Id.* at ¶38.

## ARGUMENT

### A.  General Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Bruni v. City of Pittsburgh*, 941 F.3d 73, 82 (3d Cir. 2019).  The District Court must review the facts in the light most favorable to the nonmoving party. *See Bruni*, 941 F.3d at 82.  However, the District Court may rely on a Plaintiff's sworn deposition, and may disregard any subsequent inconsistent statements offered by that Plaintiff in an effort to defeat summary judgment.  *See Killingsworth v. Potter*, 307 F. App'x 685, 687 (3d Cir. 2009).

### B.  The Executive Exemption to the FLSA

In the Third Circuit, a District Court should grant summary judgment for a Defendant on an unpaid overtime claim brought under the FLSA if there is no <u>genuine</u> dispute that the Plaintiff was properly classified as an exempt executive pursuant to the Department of Labor's regulations at 29 C.F.R. § 541.100(a).  *See Del Valle v. Officemax N. Am.*, 680 F. App'x 51, 63-64 (3d Cir.

2017),[5] *see also Itterly v. Family Dollar Stores, Inc.*, 606 F. App'x 643, 644-49 (3d Cir. 2015); *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1144-47 (3d Cir. 1983); *Simpson v. Prince Telecom, LLC*, Civil Action No. 14-1211-SLR-SRF, 2017 U.S. Dist. LEXIS 48481, at *12-23 (D. Del. Mar. 31, 2017); *Hudson v. Absecon Emergency Servs.*, No. 14-6419 (RMB/AMD), 2016 U.S. Dist. LEXIS 129602, at *31 (D.N.J. Sep. 22, 2016); *cf. also Rosano v. Twp. of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014) (affirming summary judgment for Defendant who showed Plaintiffs were properly exempted under the fire protection and law enforcement exemption in 29 U.S.C. § 207(k)); *Paul v. UPMC Health Sys.*, Civil Action No. 06-1565, 2009 U.S. Dist. LEXIS 19277, at *34-35 (W.D. Pa. Mar. 10, 2009) (administrative exemption); *Kelly-Myers v. Mercy Health Sys. of Se. Pa.*, No. 16-5194, 2017 U.S. Dist. LEXIS 160970, at *11-19 (E.D. Pa. Sep. 29, 2017) (same).[6]   During the relevant time period, the Defendant must show that: 1) the Plaintiff was compensated on a salary basis of not less than $455 per week; 2) the Plaintiff's "primary duty" was "management of the enterprise in which the employee [was] employed"; 3) the Plaintiff "customarily and regularly direct[ed] the work of two or more other employees"; and 4) the Plaintiff had "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of

---

[5] In *Del Valle*, the Plaintiff was a Merchandise Assistant Manager at an OfficeMax store, bringing his claim under the Virgin Islands Fair Labor Standards Act ("VIFLSA"). *See* 680 F. App'x at 63. The Third Circuit held that the VIFLSA "mirrors the federal Fair Labor Standards Act ('FLSA') and is interpreted in accordance with it." *Id.* Accordingly, the Third Circuit applied FLSA caselaw and FLSA regulations in affirming summary judgment for OfficeMax. *See id.* at 63. This Court should apply the same reasoning to both the Plaintiffs' FLSA claims and their PMWA and OMWA claims. *See Baum v. Astrazeneca LP*, 372 F. App'x 246, 248-49 (3d Cir. 2010) (PMWA and FLSA); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (OMWA and FLSA).
[6] Although *Rosano*, *Paul*, and *Kelly-Myers* involved different FLSA exemptions, they persuasively illustrate that courts should grant summary judgment for Defendants when the record shows there is no genuine dispute that the Plaintiffs were properly classified as exempt.

other employees [were] given particular weight." *Del Valle*, 680 F. App'x at 63 (quoting 29 C.F.R. § 541.100(a), prior to the changes effective January 1, 2020).

In considering such a motion for summary judgment, the District Court may rely on record evidence including: (1) corporate documents defining the nature of the relevant position, including job descriptions and annual performance appraisals; (2) the testimony of corporate officials with knowledge about the duties of the relevant position; and (3) the Plaintiffs' admissions in sworn deposition testimony as to their primary duties, direction of the work of others, and recommendations as to other employees. *See id.* at 62-64; *see, e.g., also Itterly*, 606 F. App'x at 646-47; *Hudson*, 2016 U.S. Dist. LEXIS 129602 at *18-31. The District Court may grant summary judgment for the Defendant if this combination of evidentiary materials satisfies Defendant's burden to show that the Plaintiff was a bona fide executive, and the Plaintiff fails to respond with evidence "that fairly calls that conclusion into question." *Del Valle*, 680 F. App'x. at 64.

The facts of *Del Valle* are worth considering at length. In that case, like here, the Plaintiff, Serrano, was primarily the manager of certain departments within his OfficeMax store:

> A written job description provided by OfficeMax states that the Merchandise Assistant Manager "manage[d] the day-to-day activities of the Specialists on the sales floor." Other job responsibilities included "[c]onstruct[ing] development plans for assigned Specialists including…annual performance appraisals." The Merchandise Assistant Manager was also required "to lead and direct the work of others in a supportive manner[.]"…[T]he Merchandise Assistant Manager "exercise[d] discretion and independent judgment in selecting the employees to whom tasks will be assigned, assigning tasks, prioritizing tasks, providing training and instruction to employees…evaluating whether employees have performed tasks correctly…and providing coaching and feedback to employees...." The Merchandise Assistant Manager also served as the Manager on Duty when the Store Manager or Assistant Store Manager were unavailable. The Manager on Duty was "responsible for making decisions about how to resolve customer and/or employee issues in the best interests of the company."

> Serrano's own testimony during his depositions confirmed that account of his responsibilities. He explained that in this role, he oversaw the Furniture and Technology sections of the store. Typically, five to six associates would work in the Technology section at a time, and anyone available would work in the Furniture

section. When asked during his deposition if he was "the supervisor responsible for that work while [the associates] work[ed] th[ose] section[s][,]" Serrano answered affirmatively. Serrano also stated that when the more senior managers were not in the store, he served as the Manager on Duty.... Serrano also stated in his depositions that he sometimes provided recommendations about candidates to hire, sometimes conducted job interviews, and had the authority to recommend disciplinary action for associates who did not perform their duties satisfactorily.... Serrano admitted during his deposition that, on at least two occasions, he interviewed candidates when there was not a Store Manager or Assistant Manager. He acknowledged that a superior "went by what I put down on a paper" after he conducted one interview. He also affirmed that he "had at least some responsibility…in holding associates accountable" for policy violations and could "recommend corrective action if it was appropriate[.]"

*Del Valle*, 680 Fed. Appx. at 62-64 (citations omitted).  On this record, the Third Circuit held that "OfficeMax thus satisfied its burden to demonstrate that Serrano was a bona fide executive, and Serrano has not provided evidence that fairly calls that conclusion into question."  *Id.* at 64.

Consistent with the Department of Labor's FLSA regulations for retail employers, the mere fact that retail managers may have spent a majority of their time performing nonexempt tasks does not fairly call into question the conclusion that their <u>primary</u> duty was management.  *See Itterly*, 606 F. App'x at 646; *Soehnle v. Hess Corp.*, 399 F. App'x 749, 750-52 (3d Cir. 2010) (holding that "'primary duty' does not connote the most time-intensive of an employee's functions but instead refers to the 'principal, main, major or most important' duty performed by the employee, regardless of how much time she devotes to it") (citing 29 C.F.R. § 541.700(a)); 29 C.F.R. § 541.700(b) ("[N]othing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work"); 29 C.F.R. § 541.700(c) ("[A]ssistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees . . . may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register."); *cf. also Guthrie*, 722 F.2d at 1144-45; *Simpson*, 2017 U.S. Dist. LEXIS 48481, at *17-18 (holding that Plaintiffs' primary duty was the management of the technicians he supervised,

8

and granting summary judgment to Defendant, despite his argument that he "spent upwards of 90% of his time off site performing non-exempt routine and recurrent field work"). Rather, in the Third Circuit, the question is whether the Plaintiff's management activities were "critical to the successful operation of the enterprise," which defines a Plaintiff's primary duties. *See Itterly*, 606 F. App'x at 646.

Moreover, when a manager remains responsible for supervising and directing his employees while performing what would otherwise be nonexempt work, the Third Circuit considers that time to be the "[c]oncurrent performance of exempt and nonexempt work." *Id.* at 647. As a matter of law, such concurrent performance of exempt and nonexempt work "does not disqualify an employee from the executive exemption." *Id.*; 29 C.F.R. § 541.106(a) ("Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption.").

The existence of a superior manager, who also oversees other managers at the same level as the Plaintiff, also does not fairly call into question the conclusion that the Plaintiff was properly classified as an exempt manager. *See id.* at 647-48 (holding that although Plaintiff received instructions from a superior manager, and consulted with their superior on hiring and disciplinary decisions, the fact that the superior was also supervising other managers of the same rank was consistent with each of them retaining substantial discretion); *see also Del Valle*, 680 Fed, App'x at 53-54, 62 (noting that the assistant manager challenging his classification as exempt worked under the supervision of a store manager along with one other assistant manager).

Indeed, most exempt managers in large corporations will have superior managers, but the question under the executive exemption is not whether a manager is the <u>top</u> manager, but rather

whether they qualify as a manager themselves.  For example, the district court in *Simpson* properly addressed this issue in granting summary judgment for the Defendant corporation:

> Plaintiff argues that management was not a primary duty because he was not relatively free from direct supervision.  Plaintiff only acted at the direction of his supervisors.  However, while Plaintiff answered to higher authority figures, the evidence indicates that Plaintiff also had the authority and discretion to manage technicians and supervisors in the New Castle facility.... Therefore, based on a qualitative analysis, the record reflects that Plaintiff's primary duty was management.

2017 U.S. Dist. LEXIS 48481 at *18-19.  In other words, to be exempt executives, employees do not need to be the <u>most</u> important managers, they just need to be <u>among</u> the managers in the chain.

Finally, the existence of detailed corporate policies, particularly in large retail chains, does not fairly call into question that a manager responsible for enforcing those polices is properly classified as exempt, particularly when the record shows that the manager exercised at least some discretion in applying those policies.  *See Itterly*, 606 Fed. App'x at 648; *see also Del Valle*, 680 Fed. App'x at 54, 63-64 (affirming summary judgment for Defendant where the Plaintiff was fired for violating corporate policies regarding use of certain coupons, and the Plaintiff was responsible for holding associates accountable for policy violations, but there was no evidence that he <u>only</u> directed employees pursuant to policy and did not use independent judgment or discretion).

In short, a Plaintiff who performed critical management duties cannot prevent summary judgment simply by pointing to a record of doing nonexempt work a majority of their time, working under the supervision of a superior manager, or being subject to detailed corporate policies.  Rather, as long as the Plaintiff's management activities were critical to the successful operation of the store, summary judgment for the Defendant is appropriate on such a record.

C. <u>Giant Eagle's Classification of All its Salaried Team Leaders was Proper as a Matter of Law</u>

As the corporate documents, testimony, and Plaintiffs' admissions in the record amply show, Giant Eagle classified all of its salaried Team Leaders as exempt under the FLSA.  In fact, there appears to be no dispute about this issue in the Plaintiffs' allegations.

There also does not appear to be any dispute about the fact that Giant Eagle paid all its salaried Team Leaders at least the minimum of $455 per week, and that its salaried Team Leaders supervised a department containing at least the equivalent of two other full-time employees.

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████.

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

Accordingly, as a matter of law, the record described above is sufficient to satisfy Giant Eagle's burden of showing that Team Leaders qualify for the executive exemption.

D. <u>Plaintiffs' Attempts to Call this Conclusion into Question Fail as a Matter of Law</u>

As is apparent both from the Amended Complaint and the testimony solicited by Plaintiffs' counsel, Plaintiffs intend to rely on the theory that because Team Leaders frequently perform what could potentially be considered "nonexempt" work, a jury could conclude—in the words of Plaintiffs' counsel during depositions—that salaried Team Leaders are not "big, important managers."  In the Third Circuit, such alleged facts do not fairly call into question the conclusion

that retail employees are exempt managers.  Accordingly, this Court should determine as a matter of law that this evidence does not disqualify salaried Team Leaders as exempt managers.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.  Again, this Court should hold that such evidence is not disqualifying as a matter of law in the Third Circuit.

Finally, Plaintiffs also apparently intend to rely on the fact that like virtually all large retail chains, Giant Eagle has various detailed corporate policies.  But, once again, the record shows that Team Leaders retain at least some discretion in the application of those policies, and therefore this Court should hold that such evidence is not disqualifying as a matter of law.

Accordingly, this Court should grant summary judgment for Giant Eagle as to the First, Third, and Fourth Causes of Action.  As in *Del Valle*, *Itterly*, and the other cases cited above, the Plaintiffs simply cannot fairly call into question Giant Eagle's classification of its Team Leaders as exempt executives.  The Court should decide this issue on the record as a matter of law.

E.   Various Specific Plaintiff and Opt-in Deposition Admissions also Require Summary Judgment in Certain Individual Cases

Because the Court should grant summary judgment in favor of Giant Eagle on the First, Third, and Fourth Causes of Action in their entirety, so too should it grant Giant Eagle summary judgment with respect to the individual claims of all Named Plaintiffs and Opt-Ins under those counts.  However, in the alternative, the Court should grant summary judgment on the relevant claims of the following individual Plaintiffs.

1.  *Amanda Frawley*

Amanda Frawley was the salaried Team Leader for the Prepared Foods departments at two stores, Rocky River and Medina.  CSMF at ¶51.  ████████████████████████████

████████████████████████████████████████████████.  *Id.* at ¶52.  ███



. *Id.* at ¶53.

. *Id.* at ¶68.

*Id.* at ¶¶54-66.[7]

. *Id.* at ¶¶67-68. . *Id.* at ¶69.

. *Id.* at ¶70.

. *Id.* at ¶71.

. *Id.* at ¶¶72-82.[8]

Finally, when shown resumes and a LinkedIn profile that she had authored, Frawley admitted they were accurate. *Id.* at ¶83.[9] She specifically admitted accurately stating that as a Prepared Foods Team Leader, she was:

---

[7] *Id.* at ¶¶140, 143-44.

[8] . *Id.* at ¶14.

[9] Again, other deponents also described their management duties as Team Leaders in various resumes or LinkedIn profiles. *Id.* at ¶¶108-110 (Graham-Robinson), 148 (Kahler), 152 (Bauers). As discussed further below, like Frawley, Graham-Robinson admitted in her sworn deposition that her resume was accurate—she in fact performed management duties. Kahler and Bauers, in contrast, claimed in their depositions that they had "embellished" their resumes.



*Id.* at ¶83.

With these admissions, Frawley further confirmed that, as a salaried Prepared Foods Team Leader, Giant Eagle properly classified her as an exempt manager.

*2. Samantha Bosma*

Samantha Bosma was the salaried Team Leader for the Candy department in the Kingsdale Market District store, then after a period as an hourly employee was the salaried Team Leader for Cheese, and finally became Team Leader for both Cheese and Candy  . *Id.* at ¶84. At her sworn deposition, Bosma admitted that at all times she supervised more than two other Team Members. *Id.* at ¶85. She admitted that it was her "ultimate responsibility" to manage her departments. *Id.* at ¶86. Bosma also admitted that, as a salaried Team Leader, she was responsible for managing her departments in myriad specific ways, including:

a. ████████████████████ . *Id.* at ¶87;

b. ████████████████████ . *Id.* at ¶88;

c. ████████████████████ . *Id.* at ¶89;

d. ████████████████████ . *Id.* at ¶90;

e. ████████████████████ . *Id.* at ¶91;

f.  *Id.* at ¶92;

g. . *Id.* at ¶93;

h. . *Id.* at ¶94;

i. *Id.* at ¶95; and

j. *Id.* at ¶96.

With these admissions, Bosma further confirmed that as a salaried Candy Team Leader, Cheese Team Leader, and then Dual Team Leader for Candy and Cheese, Giant Eagle properly classified her as an exempt manager.

*3. Danielle Graham-Robinson*

During the relevant time period, Danielle Graham-Robinson was a Health, Beauty, and Wellness ("HBW") department Team Leader at the Settlers Ridge and Pine Township stores. *Id.* at ¶98. Her departments always included more than two other employees.  . *Id.* at ¶99.

. *Id.* at ¶100.

. *Id.* at ¶102.

. *Id.* at ¶101.

*Id.* at ¶103.

. *Id.* at ¶¶104-105.

███████████████████████████████████████████████████████████████

████████████████████████. *Id.* at ¶105-107.

When shown resumes and a LinkedIn profile that she had written, and that are consistent with Giant Eagle's descriptions and expectations for salaried Team Leaders, she adopted and elaborated on those resumes in ways that make it indisputable that she was a manager of her HBW departments within the meaning of the FLSA. *Id.* at ¶108. For example, when testifying about her resume, she admitted:

    a.  that as an HBW Team Leader, her job was to "manage the health, beauty and wellness department." *Id.* at ¶108;

    b.



*Id.* at ¶109;

    c.  ███████████████████████████████████████████ *Id.* at ¶110.

With these admissions, Graham-Robinson further confirmed that when employed as a salaried HBW Team Leader, Giant Eagle properly classified her as an exempt manager.

16

*4.  Heather Gilkey*

Heather Gilkey was a salaried Team Leader for a GetGo Pad Site, █████████████

███████████████████████████.  *Id.* at ¶112.[10]   At her sworn deposition, Gilkey

admitted that at least 4-6 other people worked in her GetGo store.  *Id.* at ¶115.

Gilkey also admitted that she was the top manager in charge of that GetGo location, with

associated duties that preclude any genuine dispute that she qualified as an exempt manager.

Specifically, she admitted:



a.   ████████████████████████████████.  *Id.* at ¶113;[11]

b.   ████████████████████████████.  *Id.* at ¶114;

c.   ██████████████████.  *Id.* at ¶116;

d.   ██████████████████████████████████
       ███████████  *Id.* at ¶117;

e.   ██████████████████.  *Id.* at ¶118;

f.   █████████████████████████████████████████.  *Id.* at
       ¶119;

g.   ██████████████████████████████████
       ███████████  *Id.* at ¶120;

h.   ███████████████████████.  *Id.* at ¶121;

i.   ████████████████████████████████████
       ███████  *Id.* at ¶122;

j.   ████████████████████████████████████
       ██████████.  *Id.* at ¶123;

---

[10] As such, Gilkey was not a Senior Team Leader or Assistant Store Leader within the definition
of the parallel GetGo FLSA action.

[11] ███████████████████████████████████████████████
████████  *Id.* at ¶35.

k. █████████████████████████████████████
████████████████████████████████████████
████████. *Id.* at ¶124.

With these admissions, Gilkey further confirmed that when employed as a salaried GetGo
Pad Site Team Leader, Giant Eagle properly classified her as an exempt manager.

5.  *Andre Christian*

Andre Christian held a variety of positions within Giant Eagle, some of which will be
subject to Giant Eagle's Motion for Summary Judgment in the parallel GetGo action.  However,
like Heather Gilkey, two of Christian's positions were as a Team Leader for a GetGo Pad Site,
██████████████████████████████████████. *Id.* at ¶¶126-127.

Like Gilkey, Christian admitted that he was the top manager in charge of those GetGo
locations, supervising between seven and twelve Team Members per store.  *Id.* at ¶¶128-129. ██
████████████████████████████████████████
███████████. *Id.* at ¶¶130-132.

With these admissions, Christian further confirmed that when employed as a salaried
GetGo Pad Site Team Leader, Giant Eagle properly classified him as an exempt manager.

6.  *Jason Reed*

During the relevant time period, Jason Reed was a salaried Grocery Assistant Team Leader
at the Pinkerton store.  *Id.* at ¶133.  He admitted there were 10 to 12 people working in his
department.  *Id.* at ¶134. █████████████████████████
████████████████████████████████████████
████████ *Id.* at ¶135.

███████████████████████████████████
████████. *Id.* at ¶139.



*Id.* at ¶38.

*Id.* at ¶¶140-141.

*Id.* at ¶136.

*Id.* at ¶137.

With these admissions, Reed further confirmed that when employed as a salaried Grocery Assistant Team Leader, Giant Eagle properly classified him as an exempt manager.

**CONCLUSION**

Giant Eagle has met its burden of showing that it properly classifies its salaried Team Leaders as exempt managers.  Salaried Team Leaders play a critical role in the success of Giant Eagle's stores, because ███████████████████████████████████████████. There is no genuine dispute about these conclusions, and, in fact, the evidence provided by Giant Eagle on these issues has been confirmed by the sworn deposition testimony of the Plaintiffs.

Giant Eagle anticipates that Plaintiffs will attempt to avoid summary judgment by arguing that: (a) Plaintiffs claim a majority of their time involved nonexempt work; (b) Plaintiffs worked under the supervision and direction of superior managers, ███████████████; and (c) Plaintiffs were subject to various corporate policies.  In the Third Circuit, as a matter of law, none of these theories genuinely calls into question the conclusion that they were exempt managers.

Hence, this Court should grant summary judgment in favor of Giant Eagle as set forth in the accompanying Proposed Order.

Dated: January 21, 2020                    Respectfully submitted,

*/s/ Brian C. Hill*
Bernard D. Marcus (PA ID 01293)
marcus@marcus-shapira.com
Jonathan D. Marcus (PA ID 312829)
jmarcus@marcus-shapira.com
Erin Gibson Allen (PA ID 76990)
allen@marcus-shapira.com
Brian C. Hill (PA ID 204489)
hill@marcus-shapira.com
Joshua A. Kobrin (PA ID 318200)
kobrin@marcus-shapira.com
Elly Heller-Toig (PA ID 33244)
ehtoig@marcus-shapira.com

MARCUS & SHAPIRA LLP
301 Grant Street
One Oxford Centre, 35th Floor
Pittsburgh, PA  15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758

*Counsel for Defendant Giant Eagle, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 21, 2020, a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record entitled to notice who are registered users of ECF.

*/s/ Brian C. Hill*
Brian C. Hill