**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW FITCH, ) | |
| RICHARD D'ALESSANDRO, and ) | |
| MICHAELLE HUTCHISON, individually ) | |
| and on behalf of all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| GIANT EAGLE, INC., d/b/a GETGO CAFÉ ) | |
| + MARKET, ) | |
| ) | |
| Defendant. ) | Consolidated Civil Action No. |
| ) | 2:18-cv-01534-RJC-CRE |
| JORDAN JONES, ) | |
| ROBERT LEMUS, and ) | |
| JASON REED, individually and on behalf of ) | |
| all other similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| GIANT EAGLE, INC. ) | |
| ) | |
| Defendant. ) | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF GIANT EAGLE**

The First Amendment protects Giant Eagle's ability to engage in a dialogue with its employees about their job duties. Plaintiffs, based only on the testimony of a single, purportedly disgruntled employee and without even conditional class certification, insist that such communication can only take place on their terms. Specifically, they seek an order prohibiting Giant Eagle's use of salaried Team Leader/Assistant Store Leader ("Team Leader") Acknowledgement Forms ("forms") during bi-annual performance reviews. But they come nowhere close to presenting the clear and precise record of abuse necessary for the Court to restrict Giant Eagle's speech, let alone cut it off entirely.

In fact, the record shows that the forms do exactly what Giant Eagle intends: they prompt productive conversations with Team Leaders who express concern that they do not meet Giant Eagle's expectations. Plaintiffs offer nothing to suggest otherwise except for the testimony of opt-in Plaintiff and current Giant Eagle Team Leader Gerald Antonelli. Though he testified that he found the forms misleading, Mr. Antonelli did not identify a single word or phrase in the forms that he did not understand. Though he claimed his supervisor advised him that failure to sign the form would mean he "can't be a manager," Mr. Antonelli's supervisor (and others) directly contradicted that claim and Mr. Antonelli, of course, remains a manager after refusing to sign the form.

The irony here is hard to miss. Plaintiffs rest their Motion on Mr. Antonelli's purported concern about losing his management title if he refused to sign the form, even as he insists that he is *not* a manager. Plaintiffs, including Mr. Antonelli, cannot have it both ways. Giant Eagle must be permitted to use the forms to engage its Team Leaders in appropriate discussions about their job duties. Plaintiffs' Motion should be denied, the stay lifted, and the now ten-month-long restriction of Giant Eagle's speech ended.

**PROPOSED FINDINGS OF FACT**

1. Giant Eagle expects its salaried "Team Leaders" to manage distinct departments within Giant Eagle supermarkets and, at GetGo, its convenience stores. Dkt. 186-1 (Joint Ex. 1) at ¶¶ 6, 7. Team Leader job descriptions outline certain tasks and responsibilities that Giant Eagle expects salaried, exempt Team Leaders to perform. *See, e.g.*, Dkt. 186-15 (Ex. O).

2. As one tool to evaluate its Team Leaders, Giant Eagle for many years has conducted bi-annual performance reviews ("Reviews").

3. The ultimate manager of each store, either a Giant Eagle "Store Leader" or a GetGo "District Leader," meets with each Team Leader to conduct the Review. Dkt. 186-1 at ¶¶ 10, 11.

During this process, Team Leaders evaluate themselves as managers, ranking their performance in numerous categories, including Process Management, Problem Solving, Planning, Developing Direct Reports and Others, and Managerial Courage. Transcript of August 19, 2020 Proceedings (hereinafter "Tr.") 34:16-36:6; 37:16-18; *see* Dkt. 186-14 (Ex. K).

4. In late 2017, Giant Eagle received two letters from Plaintiffs' attorneys, asserting without support that Giant Eagle had misclassified certain Team Leaders as exempt from overtime pay and seeking a pre-litigation "resolution" of the purported claims. Dkt. 186-9 & 186-10 (Exs. A & B). The notion that any of its Team Leaders had been misclassified was news to Giant Eagle. Nonetheless, Giant Eagle resolved to "redouble" its efforts to ensure its ongoing compliance with applicable overtime laws. Tr. 57:15-25.

5. Beginning in February 2018, prior to the commencement of this lawsuit, Giant Eagle Store Leaders and GetGo District Leaders presented the forms to the Team Leaders in their stores. Tr. 57:3-6; 71:23-72:14; 73:6-8; Dkt. 186-1 at ¶ 12. Giant Eagle created the forms to provide another tool to engage its Team Leaders in a dialogue about Giant Eagle's leadership expectations and their job duties. Tr. 45:20-23; 57:15-25; 59:5-11; 59:22-60:6; 70:11-15; 77:1-7.

6. At the outset, Giant Eagle presented the forms electronically on Giant Eagle's "Torch" system, and Team Leaders completed them on a computer. Tr. 73:12-74:1. To introduce the forms and explain their purpose, the forms stated in the first paragraph, "Recently, certain current and former Leaders questioned whether they were properly classified." Tr. 23:19-22; 64:7-13; *see* Dkt. 186-12 (Ex. D).

7. The forms then set forth Giant Eagle's requirements for Team Leaders and asked the Team Leaders if they agreed or did not agree that they met those requirements. Dkt. 186-1 at Ex. A; Dkt. 186-12 (Ex. D). Giant Eagle took care to draft the forms consistent with its Team

3

Leader job descriptions, using language already well known to the Team Leaders. Tr. 65:15-20; 66:14-23; 67:25-68:4; 68:16-69:2; 70:11-15. Giant Eagle also included each Team Leader's job description with the forms as another familiar point of reference. Tr. 73:18-74:1; *see* Dkt. 186-15 (Ex. O).

8. Since February 2018, the forms became a part of Giant Eagle's Review. Dkt. 186-1 at ¶ 12.

9. If any of the Team Leaders had a question or concern about the forms, they had numerous resources at their disposal. They could speak to the supervisor across the table from them, human resources partners who they see on a regular basis or Giant Eagle operations personnel who they routinely see in the stores. Tr. 66:14-67:10. Aside from Plaintiff Gerald Antonelli's testimony at the hearing on the instant Motion, no Team Leaders have indicated that they are confused by or unable to understand the forms. *Id.*; Tr. 76:15-25. Giant Eagle Team Leaders generally do not hesitate to provide feedback about any questions or concerns they may have. Tr. 76:23-25; *see also, e.g.*, Testimony of Gerald Antonelli.

10. No Store Leader or District Leader suggested a particular response or directed Team Leaders to provide a particular response to the forms, nor did anyone pressure Team Leaders to provide a response to the forms at all. Tr. 72:15-73:5; 80:4-11; 84:5-10.

11. Though Giant Eagle encourages Team Leaders to complete the forms as part of their Review, they are not mandatory. Dozens of Team Leaders did not complete the forms. *See* Dkt. 186-8; Tr. 70:24-71:9. No Team Leaders were disciplined or punished for neglecting to complete them. Tr. 73:3-5; 74:2-19. In fact, Plaintiff Antonelli refused to sign the form in or around August 2019 and received a merit pay increase in October 2019. Tr. 28:2-16.

12. The forms do not ask Team Leaders to make a legal determination as to whether or not they are exempt from overtime pay under the FLSA or any other law. As is clear from the face of the document, the forms seeks only an "acknowledgement" of whether the Team Leader believes, subjectively, that he or she performs management duties consistent with his or her job description and Giant Eagle's expectations for a Team Leader. *See e.g.*, Dkt. 186-1 at Ex. A; *see* Tr. 45:20-23; 70:11-15. If a Team Leader does not agree that he or she meets Giant Eagle's expectations or has some concern about them, stating those concerns only helps prompt further dialogue. Tr. 51:13-24; 52:12-15; 57:15-25. Giant Eagle makes a separate and distinct determination about whether or not Team Leaders are properly classified. Tr. 59:22-60:6.

13. In the few instances where Team Leaders indicated that they did "not believe that [they met] the requirements of a salaried, exempt Leader," those responses generated the intended discussions between Giant Eagle and the Team Leaders. Tr. 51:8-19; 75:7-12. For example, one Team Leader who did not believe she met Giant Eagle's requirements was concerned that she needed additional leadership training. Giant Eagle responded by providing the Team Leader with additional training and pairing her with a suitable mentor. Tr. 76:4-14. She remains a salaried Team Leader. *Id.*

14. Among conversations Giant Eagle conducted with the few Team Leaders who did not believe they met Giant Eagle's expectations, only one of them resulted in Giant Eagle reclassifying a Team Leader as an hourly employee. The Team Leader had only recently moved to a new position, and, after discussion, Giant Eagle agreed that the new position did not meet its requirements for a manager. Though he kept his new managerial position, Giant Eagle promptly began paying that Team Leader on an hourly basis and paid him for the overtime he had worked in his new position. Tr. 51:25-52:5; 63:6-9; 75:7-76:3.

15. No Team Leaders were ever punished, disciplined or reprimanded for indicating that they "do not believe" they met Giant Eagle's requirements. Tr. 52:6-15; 72:24-75:2; 74:24-76:14; *see also* Tr. 28:8-11.

16. The forms do not seek a waiver of any rights. *See e.g.*, Dkt. 186-1 at Ex. A; Dkt. 186-15 (Ex. O). Nor does Giant Eagle intend to argue that the forms constitute a waiver of any Team Leader's rights. Tr. 65:4-7; 93:14-95:1.

17. There is no evidence that the forms have deterred putative class members from participating in this litigation. In fact, dozens of current and former Team Leaders have opted in to the lawsuit since Giant Eagle began using the forms, including Mr. Antonelli and his former co-worker, Sheri Heron. Tr. 27:12-24; 73:6-11.

18. The testimony of Mr. Antonelli, the only Plaintiffs' witness who supports the Motion, was at various times evasive, combative, self-contradictory and incredible. *See, e.g.*, Tr. 32:10-33:7 (first testifying that he does not understand the term "primarily manage," then testifying, "I understand it, but it's misleading."); 35:6-8; 37:10-14 (first admitting that he graded his own performance as a manager but later denying that he graded his performance as a manager); Tr. 28:2-16 (first testifying that the forms are mandatory, then testifying that he did not sign the form and was not disciplined or otherwise penalized for refusing to do so); 24:22-25:1 (testifying that he did not complete the form on a computer in February 2018, even though at that time Giant Eagle administered the form on a computer); 18:11-12 (testifying that he only "glanced" at the form before signing it, then testifying he "didn't understand a lot of it."); 38:16-43:2 (testifying that he has never heard of "LinkedIn," but admitting that the information on a LinkedIn page bearing his name, title and skills "is about me.").

6

19. Brian Zahler and Jenn Kennedy, Mr. Antonelli's supervisors at all relevant times, each testified that they never pressured Mr. Antonelli to sign the forms in a particular way, or even to sign the forms at all. Tr. 80:4-11; 84:5-10.

## **CONCLUSIONS OF LAW**

1. The First Amendment protects Giant Eagle's right to use the forms to communicate with its Team Leaders about their job requirements. *See Bobryk v. Durand Glass Mfg. Co.*, 2013 U.S. Dist. LEXIS 145758, *9 (D.N.J. Oct. 9, 2013) ("District courts must use their power to restrict communications in class actions sparingly given the significant First Amendment concerns associated with any such restraint.") (citing *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008)).

2. Any restriction of Giant Eagle's First Amendment right must be based on a clear record of abuse. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-101 (1981).

3. Plaintiffs present no record, let alone a clear record from which specific findings can be made, that Giant Eagle's use of the forms is abusive, misleading, deceptive or coercive. *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227 (S.D. Al. 2008).

4. It was not misleading or deceptive to base the forms on Team Leaders' job descriptions, incorporate language with which those Team Leaders are already familiar, attach their job descriptions to the forms, and ask them whether they believe that they meet Giant Eagle's job requirements. *See In re Sch. Asbestos Litig.*, 842 F.2d 671, 684 (3d Cir. 1988) (holding that findings that communications are misleading or pose a threat to the fairness or integrity of the litigation are necessary to restrict speech).

5. Giant Eagle has a long history of not only developing leaders, but also asking its leaders to evaluate *themselves* as managers. Using the forms as an additional evaluative tool does not mislead "employees into volunteering information that they otherwise would not have"

7

provided. *Alequin v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 99458, *37 (S.D. Fl. July 12, 2013).

6.  Nor is Giant Eagle's use of the forms coercive. Communication is only coercive if it "overpowers the free will or business judgment of potential members." *Jenifer v. Delaware Solid Waste Auth.*, 1999 U.S. Dist. LEXIS 2542, *16-*17 (D. D.E. Feb. 25, 1999). Here we have a clear record showing dozens of Team Leaders never signed the form. Others indicated that they do not believe they meet Giant Eagle's requirements for a Team Leader, and the record shows Giant Eagle responded by taking appropriate action—not by punishing its employees, but by addressing their concerns and complying with the law.

7.  It is not enough for Plaintiffs to assert that Team Leaders felt compelled to complete the forms because a supervisor directed them to do so. *See Bobryk*, 2013 U.S. Dist. LEXIS 145758 at *15 ("the inherently coercive nature of the employer-employee relationship is insufficient to demonstrate that the defendant's interviews were improper.") (quoting *Slavinski v. Columbia Assoc., Inc.*, 2011 U.S. Dist. LEXIS 33729 at *4 (D. Md. Mar. 30, 2011)). Aside from Mr. Antonelli's questionable testimony—testimony contradicted by every other witness, every other fact of record, and, at times, by Mr. Antonelli himself—Plaintiffs point to nothing more.

8.  Plaintiffs also identify no case where a Court restricted an employer's speech under these circumstances. Nor could they. Every case in this Circuit, including those decided this summer, cuts against them. *See e.g., Arroyo v. Aspen Constr. Servs.*, 2020 U.S. Dist. LEXIS 136061, at *15-16 (E.D. Pa. July 31, 2020) (denying motion to limit employer's speech); *Portillo v. Nat'l Freight, Inc.*, 2020 U.S. Dist. LEXIS 115502, at *5 n.4 (D.N.J. June 30, 2020) (same).

9.  Plaintiffs also cite no authority and can point to nothing in the record showing the forms threaten the proper function of the litigation. Giant Eagle initiated its use of the forms prior

to the commencement of any litigation and told Team Leaders exactly why: "Recently, certain current and former Leaders questioned whether they were properly classified." *See* Dkt. 186-12 (Ex. D). After litigation commenced, Giant Eagle's use of the forms did nothing to prevent Mr. Antonelli and at least one of his colleagues from opting in.

10. Even if Giant Eagle created the forms *solely* for the purpose of litigation—and the record shows that, in fact, Giant Eagle created the forms and uses them for a business purpose—that is permissible, too. *See Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366-67 (S.D. Ga. 2008) (denying plaintiff's request to strike declarations, finding that "there is nothing improper about [defendant] gathering facts to support its defense"). This is not a close case.

11. Though Plaintiffs make much of the idea that the forms pressure putative class members to waive their rights, the forms do not seek any waiver of rights. Nor could they. *Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, 2017 U.S. Dist. LEXIS 76669, at *3-4 (E.D. Pa. May 18, 2017) ("An employee's right to a minimum wage and overtime pay under the FLSA cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.").

12. Essentially, Plaintiffs complain that, upon receiving letters—out of the blue—from unknown attorneys demanding payment for purportedly misclassifying unnamed salaried employees, Giant Eagle redoubled its efforts to engage Team Leaders in a dialogue about their duties and Giant Eagle's expectations. In fact, Giant Eagle did what any reasonable and conscientious company with some 35,000 employees would do. It instituted additional measures to ensure its ongoing compliance with the law and prompted meaningful dialogue with its Team Leaders.

13. The record shows that the forms work precisely as Giant Eagle intended. Giant Eagle did not rely on the forms to classify employees. To the contrary, they only prompted Team Leaders to raise questions or concerns. Giant Eagle has addressed—and will continue to address—any such questions or concerns. Should any current Team Leaders instead opt to follow Mr. Antonelli's path—apparently seeking to hold a managerial position even as they ask the Court to determine that they are *not* managers—they can go right ahead. At the same time, Giant Eagle must be allowed to run its business without unconstitutional interference.

14. This Court finds, as a matter of law, that Giant Eagle's speech should not be restricted based on the record before it, and Giant Eagle's continued use of the forms as part of its Review of Team Leaders may continue.

Dated: August 30, 2020

Respectfully submitted,

*/s/ Jonathan D. Marcus*
Bernard D. Marcus (PA ID 01293)
marcus@marcus-shapira.com
Jonathan D. Marcus (PA ID 312829)
jmarcus@marcus-shapira.com
Elly Heller-Toig (PA ID 33244)
ehtoig@marcus-shapira.com
Brian C. Hill (PA ID 204489)
hill@marcus-shapira.com
Matthew R. Mazgaj (PA ID 327068)
mazgaj@marcus-shapira.com

MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
301 Grant Street
Pittsburgh, PA  15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758

*Counsel for Defendant Giant Eagle, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2020, a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record entitled to notice who are registered users of ECF.

*/s/ Jonathan D. Marcus*
Jonathan D. Marcus