IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| ANDREW FITCH, RICHARD D'ALESSANDRO, MICHAELLE HUTCHISON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARY SITUATED;<br><br>          Plaintiffs,<br><br>     vs.<br><br>GIANT EAGLE INC,<br><br>          Defendant, | 2:18-CV-01534-RJC |

## **REPORT AND RECOMMENDATION**

Cynthia Reed Eddy, Chief United States Magistrate Judge.

### I.     RECOMMENDATION

This civil action was initiated by Plaintiffs, a putative class/collective of employees of Defendant Giant Eagle and/or GetGo (collectively "Defendants" or "Giant Eagle") for allegedly misclassifying Plaintiffs as exempt employees and denying overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and various state laws.  The court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

Presently pending before the court is Plaintiffs' motions for conditional certification (ECF No. 110 and 111).  For the reasons that follow, it is respectfully recommended that the motions be granted and the court issue notice to the putative opt-in plaintiffs.

1

**II.     REPORT**

    a.  Background

Giant Eagle is one of the largest food retailers and distributors in the nation with its principal place of business in Pittsburgh, Pennsylvania.  Plaintiffs are a putative class/collective of current and former employees who allege that Giant Eagle uniformly misclassified Team Leaders ("TLs") and Team Leader Trainees ("TL Trainees")[1] and Senior Team Leaders ("STLs"), Senior Team Leader Trainees ("STL Trainees")[2] (collectively "S/TLs" and "S/TL Trainees") as salaried employees and failed to pay them overtime compensation for working above 40 hours a week in violation of the FLSA.  Giant Eagle considered these employees as exempt under the executive exemption to the FLSA.  Plaintiffs generally argue that their primary duties were not executive or managerial in nature and the majority of their job duties were identical to non-exempt hourly employees.  Plaintiffs seek conditional certification of the following collectives:

1. All persons who are or were formerly employed by Giant Eagle in the United States[3] during the relevant period as TLs, including individuals holding comparable salaried positions with different titles, and who were classified by Giant Eagle as exempt from overtime compensation;

2. All persons who are or were formerly employed by Giant Eagle in the United States during the relevant period who participated in Giant Eagle's training program for TLs, and who were classified by Giant Eagle as exempt from overtime compensation;

3. All persons who are or were formerly employed by Giant Eagle in the United

---

[1]     TLs and TL Trainees work in Giant Eagle grocery stores, including its signature, market district and market district express stores.

[2]     STLs and STL Trainees work in Giant Eagle's GetGo Café and Market, gas stations and convenience stores.  STLs are also referred to as Assistant Store Leaders or "ASLs" but for purposes of this motion, the court will refer to these employees as STLs, though the reference is inclusive of both job titles.

[3]     Specifically, Giant Eagle operates 175 supermarkets across Pennsylvania, Ohio, Maryland, Indiana and West Virginia.

      States[4] during the relevant period as STLs, including individuals holding comparable salaried positions with different titles and who were classified by Giant Eagle as exempt from overtime compensation; and

4. All persons who are or were formerly employed by Giant Eagle in the United States during the relevant period who participated in Giant Eagle's training program for STLs, and who were classified by Giant Eagle as exempt from overtime compensation.

At the time the pending motions were filed, twenty-two individuals opted into the TL and TL Trainee collective and seven individuals opted into the STL and STL Trainee collective. (ECF Nos. 110-1 at 6; 111-1 at 7). Collectively, the TL and TL Trainee opt-ins worked at over 45 different Giant Eagle locations (ECF No. 110-1 at 11) and the STL and STL Trainee opt-ins worked at over 24 GetGo locations. (ECF No. 111-1 at 10).

The parties engaged in limited discovery prior to the pending motions, which included the Federal Rule of Civil Procedure 30(b)(6) deposition of three Giant Eagle corporate representatives, the deposition of thirteen Plaintiffs and opt-in members, the declarations of sixteen Plaintiffs and opt-in members and 2,900 documents produced by Giant Eagle. (ECF Nos. 110-1 at 6; 111-1 at 7-8; 138 at 8; 139 at 8).

TLs and TL Trainees allege that they are paid a salary, are classified by Giant Eagle as exempt from overtime under the executive exemption of the FLSA, have worked over 40 hours per week and have not received overtime compensation for that time, due to their exempt status. TLs and TL Trainees allege that they engage in non-exempt, manual duties such as merchandising, setting up displays, unpacking shipments, stocking shelves, counting inventory, engaging in customer service, preparing food and cleaning the store. (ECF No. 110-1 at 11-12). TLs and TL Trainees allege that these duties comprise approximately 70% to 95% of their workday and their

---

[4]     GetGo has operations in Pennsylvania, Ohio, Maryland, Indiana and West Virginia.

primary duties do not involve hiring, firing, disciplining, promoting, setting rates of pay for or managing employees. *Id*. at 13.  TLs and TL Trainees allege that the Store Leader, to whom TLs report to, makes decisions with regard to hiring, firing, disciplining, promotions, setting rates of pay, managing the store employees in consultation with corporate, human resources and their own supervisor, the District Leader. *Id.* at 13.  TLs and TL Trainees also allege that they are entitled to the same benefits, subject to the same salary and pay grade structure, eligible for the same bonus plan, eligible for the same 401k plan, receive the same amount of holidays off, receive the same number of incidental and bereavement days off, scheduled to work 45 hours per week, subject to the same policies in Giant Eagle's employee handbook and evaluated using the same core metrics. *Id*. at 12.  While some TLs claim that they set the schedule for their department, those schedules must be approved by their supervisor. (*See* ECF Nos. 110-10; 110-14; 110-18).  Further, while some TLs claim that they had the capabilities to discipline or "write up" other employees, that discipline had to be approved by their supervisors. *Id*.  TLs claim that while they are scheduled to work 45 hours per week with five hours accounting for break time, because the stores are busy and allegedly understaffed, the average TL works between 45 and 65 hours each week. (ECF No. 110-1 at 14-15).  TL Trainees allege that during their 8- to 12-week development program, they receive the same training regardless of the department or store where they are employed, and the training includes profit and loss, discipline, food safety, OSHA training and first aid. *Id*. at 12.

     STLs and STL Trainees allege that their primary duties include making coffee and other beverages, preparing food, stocking the shelves with food and other products, serving customers, working on the cash register and cleaning the store. (ECF No. 111-1 at 12).  The seven STL opt-ins allege that these manual job duties comprise approximately 85% to 90% of their workday and their primary duties do not involve hiring, firing, disciplining, promoting employees, setting rates

of pay or managing employees and those duties were reserved specifically for the Store Leader in consultation with corporate and District Leaders. *Id.* The STLs and STL Trainees maintain that their duties were the same regardless of the GetGo location they worked. *See e.g. id.* at 20. STLs and STL Trainees allege that Giant Eagle considered them exempt from overtime pay under the FLSA's executive exemption and regularly worked overtime and were not paid overtime wages. *Id.* at 14. STLs and STL Trainees claim on average, they worked between 45 and 65 hours each week because the stores were busy and understaffed. STLs and STL Trainees also allege that they were all subject to the same bonus structure. *Id.* at 20. STL Trainees allege that during their development program they were provided with a uniform set of training materials that applied to all GetGo STLs regardless of the location of the store where they worked, were salaried employees and considered FLSA exempt and worked over 40 hours per week without overtime pay. *Id.* at 12.

      b.  <u>Standard of Review</u>

Collective actions brought under the FLSA, unlike class actions under Federal Rule of Civil Procedure 23, may be conditionally certified by the court to jumpstart and facilitate the notice process to potential collective action members. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, (2013). Although "conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution of notice to potential participants serves legitimate purposes including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989).

Conditional certification "requires a named plaintiff to make a 'modest factual showing' – something beyond mere speculation – to demonstrate a factual nexus between the manner in which

the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). In other words, this initial step of conditional certification is a determination of whether similarly situated plaintiffs exist. *Zavala*, 691 F.3d at 536 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). In deciding whether employees in a putative collective are similarly situated for conditional certification, "[r]elevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Zavala*, 691 F.3d at 536-37. Courts making a determination on a conditional certification motion "typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification[,]" and given the "modest burden" during the first stage of the proceedings, "motions for conditional certification are generally successful." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (citations omitted).

    c. <u>Discussion</u>

First at issue is the burden of proof that applies to the motions for conditional certification. Giant Eagle argues that due to the exchange of discovery in this matter, Plaintiffs must meet a heightened burden of proof in supporting its contention that the putative collective is similarly situated, *i.e.*, the "modest-plus" standard that has been applied by other district courts in this circuit. Assuming without deciding that the Court of Appeals for the Third Circuit would adopt such a standard, courts that have applied this "modest-plus" standard have done so only when all or a substantial portion of meaningful discovery related to whether the parties were similarly situated

had been completed by the parties. *See Swank v. Wal-Mart Stores, Inc.*, No. 2:13-CV-1185, 2018 WL 2684102, at *9 (W.D. Pa. June 5, 2018) (litigation ongoing for five years, both parties deposed multiple witnesses and conducted multiple rounds of written discovery, plaintiffs contacted well over one thousand putative class members and received a significant number of consent to join forms, the only remaining discovery was related to compensation and not the extent to which the collective was similarly situated and the plaintiffs contemporaneously sought Federal Rule of Civil Procedure 23 class certification); *Sloane v. Gulf Interstate Field Servs., Inc.,* No. 4:16-CV-01571, 2017 WL 1105236, at *7-*10 (M.D. Pa. Mar. 24, 2017) (significant discovery exchanged over a three year period as a result of multiple related cases, a significant number of plaintiffs had already opted in, and the plaintiffs contemporaneously sought Rule 23 class certification).

In the instant matter, the amount of discovery conducted between the parties and procedural posture is not akin to that conducted in *Sloane* and *Swank* to support applying a heightened standard. "District courts have generally found that a more heightened standard at the conditional certification stage is not appropriate when discovery has not been concluded, no plaintiffs have opted-in, and/or the case is not ready for trial." *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 350–51 (W.D. Pa. 2018) (collecting cases). Here, discovery is not concluded, only a small fraction of potential plaintiffs have opted-in and the case is far from trial ready. While the parties have conducted some discovery, that discovery was limited to exploring settlement (ECF Nos. 140 at 3 n.3; 140-1 at 3) and was comprised of three depositions of corporate representatives and depositions of the opt-in Plaintiffs who submitted declarations. The court only ordered the parties to engage in limited informal discovery. (*See* ECF No. 66). That the case is two years old does not adequately portray the procedural posture, as most of that time was spent litigating motions to dismiss, motions for equitable tolling and a motion for protective order. The fact that the parties

7

engaged in some discovery prior to the conditional certification motions does not require the court to apply a heightened standard. *See Rood*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *3 (applying the "modest factual showing" standard where several witnesses and corporate representative submitted testimony); *Bowser*, 324 F.R.D. 346, 351 (W.D. Pa. 2018) (collecting cases). Accordingly, the court will determine whether there "exists an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated." *Vasil v. Dunham's Athleisure Corp.*, 2015 WL 7871360, at *3 (W.D. Pa. Dec. 4, 2015).

Turning to the substance of the conditional certification motions, Plaintiffs have made a modest factual showing that S/TLs and Trainees were subjected to the Giant Eagle policy which considered S/TLs and Trainees exempt from the FLSA under the executive exemption, were paid on a salary basis, had little or no management duties and primarily performed manual, nonexempt tasks, worked overtime and were not paid overtime wages. Each TL and TL Trainee declarant maintains that 70% to 95% of their workday was spent serving customers, breaking down shipments, preparing food, setting up displays, stocking shelves, physically moving merchandise, counting inventory, ordering supplies and cleaning. The declarant TLs and TL Trainees maintain that their job duties remained the same even when they moved departments or stores.

Giant Eagle argues that because Plaintiffs narrowed the class to only salaried S/TLs and S/TL Trainees instead of all S/TLs and S/TL Trainees, it shows that they are not similarly situated because some S/TLs were hourly and union workers. That Plaintiffs narrowed the definition of the collective after obtaining discovery does not foreclose a finding that the new collective definition is not similarly situated. Instead, this narrower definition comports with the discovery completed so far and it is not improper for a putative collective to revise its definition consistent

with the evidence in the case. *See e.g., Weisfeld v. Sun Chem. Corp.*, 84 Fed.Appx. 257, 259 (3d Cir.2004) ("a court is not bound by the class definition proposed in the complaint.").

Giant Eagle posits many arguments which would require the court to weigh evidence and resolve factual disputes and are better suited for stage two certification upon a completed record, *i.e.*, that S/TLs are trained on a case by case basis, some manage two departments at once, that Giant Eagle requires the S/TLs to primarily manage their departments, that they conduct annual performance reviews to assess performance against the S/TL job description, the opt-in S/TLs have dissimilar job duties, some did not exercise their management authority and some trained employees. Although the parties have engaged in some discovery prior to the filing of the present motions, merits discovery has not been concluded and it would be premature to make determinations on Giant Eagle's arguments at this stage. "Whether individualized determinations will predominate and render this case unsuitable for a collective action is more appropriately reviewed during step two of the certification process." *Bowser*, 324 F.R.D. at 352 (internal citations and quotation marks omitted).

Giant Eagle also argues that because the S/TLs and Trainees worked in different departments within Giant Eagle and GetGo and in different store locations, they cannot met the factor that they are "are employed in the same corporate department, division, and location." *Zavala*, 691 F.3d at 536-37. While S/TLs and Trainees were employed in different departments within Giant Eagle and GetGo and different Giant Eagle and GetGo stores, they uniformly maintain that their job duties primarily consisted of manual duties regardless of the department or store within which they worked. Giant Eagle also argues that the putative collectives do not advance similar claims because some S/TLs admitted they were managers and those who did not admit to managing refused to work in accordance with their job description. These arguments are

9

better suited with the benefit of a completed record, and even so may not be dispositive of whether the collectives advance similar claims. *Sloane*, 2016 WL 878118, at *5 ("whether a plaintiff falls within a particular exemption under the FLSA overtime provision constitutes a mixed question of law and fact, and ultimately requires courts to examine the historical and record facts); *Haskins v. VIP Wireless Consulting*, 09-754, 2009 WL 4639070, at *6 (W.D. Pa. Dec. 7, 2009) ("[W]hether an employee is exempt from overtime provisions is a mixed question of law and fact to be resolved by the court.").

Plaintiffs have met their modest showing that their claims and circumstances of employment are similar: S/TLs and Trainees spent more than a majority of their time on manual, non-managerial tasks, had de minimis or no management responsibilities, were considered exempt employees under the executive FLSA exemption by Giant Eagle, regularly worked overtime and were not paid overtime wages. The putative collectives seek the same form of relief to be paid uncompensated overtime wages, and while their wages are not identical, they are paid using the same pay scale. Plaintiffs have therefore met their burden of showing of "an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated[,]" *Vasil*, 2015 WL 7871360, at *3, and it is respectfully recommended that the motions for conditional certification be granted. Once discovery is completed, Plaintiffs will have the burden of meeting the greater standard in the final certification stages, and Giant Eagle may reassert its arguments at that procedural juncture.

d. Conclusion

Based on the foregoing, it is respectfully recommended that Plaintiffs' motions for conditional certification (ECF No. 110 and 111) be granted and the court issue notice to the

putative opt-in plaintiffs.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until **November 12, 2020** to file objections to this report and recommendation.  Unless otherwise ordered by the District Judge, responses to objections are due by **November 27, 2020**.  Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: October 28, 2020.                                                            Respectfully submitted,
                                                                                                    s/ Cynthia Reed Eddy
                                                                                                    Chief United States Magistrate Judge