**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW FITCH, RICHARD D'ALESSANDRO, and MICHELLE HUTCHINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIANT EAGLE, INC. d/b/a GETGO CAFÉ + MARKET,<br><br>Defendant. | Consolidated Civil Action<br>No. 2:18-cv-01534-RJC-CRE |
| JORDAN JONES, ROBERT LEMUS, and JASON REED, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIANT EAGLE, INC.,<br><br>Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR FLSA SETTLEMENT APPROVAL**

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. BACKGROUND AND PROCEDURAL HISTORY ........ 3

III. TERMS OF THE SETTLEMENT ........ 7

A. Notice of Settlement to Collective Members ........ 8

B. Participation in Settlement by Collective Members ........ 9

C. Allocation of Payments to Plaintiffs and Collective Members ........ 10

D. Release of Claims by Collective Members ........ 11

E. Settlement Administrator ........ 11

F. Service Awards to Plaintiffs and Collective Members ........ 12

G. Attorney's Fees, Costs and Expenses ........ 12

IV. LEGAL ARGUMENT ........ 13

A. The Court Should Approve this FLSA Settlement ........ 13

B. The Settlement Resolves a *Bona Fide* Dispute Between the Parties ........ 14

C. The Settlement is Fair and Reasonable ........ 15

1. The Complexity, Expense and Duration of the Litigation ........ 16

2. The Reaction of the Class to the Settlement ........ 16

3. The Stage of the Proceedings and Amount of Discovery Completed ........ 17

4. The Risks of Establishing Liability and Damages ........ 18

5. The Risk of Maintaining the Action Through to Trial ........ 19

6. The Ability of Defendant to Withstand a Greater Judgment ........ 20

7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery ........ 21

8. The Range of Reasonableness of the Settlement in Light of the Attendant Circumstances ........ 21

D. The Settlement Furthers the Implementation of the FLSA .................................. 23

E. The Proposed Settlement Notice is Proper ......................................................... 24

F. The Service Awards Should Be Approved as Fair and Reasonable ...................... 24

G. The Settlement Administrator's Fees and Expenses Should Be Approved .......... 25

H. Attorney's Fees and Costs Should Be Approved as Fair and Reasonable ............ 25

1. The Size of the Fund ................................................................... 27

2. The Presence or Absence of Objections to the Fee Award ........... 27

3. The Skill and Efficiency of Plaintiffs' Counsel ............................ 28

4. The Amount of Time Devoted to the Case by Plaintiffs' Counsel ...

5. The Risk of Non-Payment ........................................................... 29

V. CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bettger v. Crossmark, Inc.*
Civ. A. No. 13-cv-2030, 2015 U.S. Dist. LEXIS 7213 (M.D. Pa. Jan. 22, 2015) ........ 13

*Brown v. Progressions Behavioral Servs*., No. 16-6054, 2017 U.S. Dist. LEXIS 108487 (E.D. Pa. July 13, 2017)........ 21

*Confair v. Charles P. & Margaret E. Polk Found.*
Civ. A. No. 1:17-cv-0674, 2018 U.S. Dist. LEXIS 76434 (M.D. Pa. May 7, 2018) ........ 13, 17

*Creed v. Benco Dental Supply Co.*
Civ. A. No. 12-01571, 2013 U.S. Dist. LEXIS 132911 (M.D. Pa. Sept. 17, 2013) ........ 4

*Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 149 (E.D. Pa. 2000)........ 28

*Deitz v. Budget Renovations & Roofing, Inc.*
Civ. A. No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. May 29, 2013) ........ 14

*Doe v. Deville*, 257 F.3d 309, 322 (3d. Cir. 2001) ........ 16

*Fein v. Ditech Fin., LLC*, No. 16-cv-00660, 2017 U.S. Dist. LEXIS 158479 (E.D. Pa. Sept. 27, 2017) ........ 23, 27, 29

*Girsh v. Jepson*
521 F.2d 153 (3d Cir. 1975) ........ *passim*

*Gunter v. Ridgewood Energy Corp*., 223 F.3d 190 (3d Cir. 2000)........ 27

*Haley v. Bell-Mark Techs. Corp.*
Civ. A. No. 1:17-CV-1774, 2019 U.S. Dist. LEXIS 72365 (M.D Pa. Apr. 30, 2019) ........ 14

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........ 24

*Howard v. Philadelphia Hous. Auth.*
197 F. Supp. 3d 773 (E.D. Pa. 2016) ........ 14

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ........ 21

*In re Chickie's & Pete's Wage & Hour Litig.*
Civ. A. No. 12-cv-6820, 2014 U.S. Dist. LEXIS 30366 (E.D. Pa. Mar. 7, 2014) …. 16, 28

*In re Family Dollar FLSA Litig.*
637 F.3d 508 (4th Cir. 2011) ........................................................................ 3, 19

*In re Greenwich Pharm. Sec. Litig.*, 1995 U.S. Dist. LEXIS 571 (E.D. Pa. Apr. 26, 1995).. 27

*In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166 (E.D. Pa. 2000) ....................................27, 29

*In re Lucent Techs., Inc.*, 327 F. Supp. 2d 426 (D.N.J. 2004) ..........................................................29

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 ...................................................20

*In re Prudential Ins. Co. Am. Sales Practice Litig.*
148 F.3d 283 (3d Cir. 1998) ................................................................. 16, 20, 26

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d. Cir. 2005)...............................................26

*In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2002) ................ 21

*Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-0cv-01007-NR
2019 U.S. Dist. LEXIS 182359 (W.D. Pa. Oct. 22, 2019) ..................................... *passim*

*Kraus v. PA Fit II, LLC*
155 F. Supp. 3d 516 (E.D. Pa. 2016) .................................................. 13, 14, 19, 22, 26

*Kritzer v. Safelite Solutions*
Civ. A. No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012)
........................................................................................................ 16, 17, 19, 22, 25

*Loughner v. University of Pittsburgh*
260 F.3d 173 (3d Cir. 2001) ........................................................................................ 26

*Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*
679 F.2d 1350 (11th Cir. 1982) .................................................................... 13, 14

*Mabry v. Hildebrandt*
Civ. A. No. 14-5525, 2015 U.S. Dist. LEXIS 112137 (E.D. Pa. Aug. 24, 2015) ......20, 23

*McGhee, et al. v. TOMS King, et al*, No. 2:19-cv-1470-RJC (W.D. Pa.) ...............................15

*Mitchell v. People for People Charter Sch., Inc.*
Civ. A. No. 17-2416, 2018 U.S. Dist. LEXIS 72691 (E.D Pa. Apr. 27, 2018) .........13, 26

*Morgan v. Family Dollar Stores, Inc.*
551 F.3d 1233 (11th Cir. 2008) ........................................................................ 3, 19

*Potoski v. Wyo. Valley Health Care Sys.*
Civ. A. No. 3:11-CV-00582, 2020 U.S. Dist. LEXIS 5765 (M.D. Pa. Jan. 4, 2020) ........ 15, 25

*Pritchard v. Bimbo Bakeries USA, Inc.*
Civ. A. No. 3:17-cv-01083-ARC, 2018 U.S. Dist. LEXIS 146328 (M.D. Pa. Aug. 23, 2018) ........ 17, 25

*Reed v. Gen. Motors Corp.*
703 F.2d 170 (5th Cir. 1983) ........ 22

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d. Cir. 2011) ........ 24

*Tavares v. S-L Distrib. Co.*, No. 13-cv-1313, 2016 U.S. Dist. LEXIS 57689 (M.D. Pa. May 2, 2016) ........ 20

*Waltz Aveda Transp. & Energy Servs.*,
Civ. A. No. 4:16-CV-00469, 2017 U.S. Dist. LEXIS 105310 (M.D. Pa. July 7, 2017).. 15

*Weismantle v. Jali*
Civ. No. 13-1087, 2015 U.S. Dist. LEXIS 53435 (W.D. Pa. Apr. 23, 2015) ........ 23

*Wojtaszek v. Bald Eagle Fuel & Tire, Inc.*
Civ. A. No. 4:17-cv-01888-RDM, 2018 U.S. Dist. LEXIS 207030 (M.D. Pa. Nov. 28, 2018) ........ 25

**Statutes**

29 U.S.C. § 201 ........ 1

29 U.S.C. § 216 ........ 10, 25

O.R.C. § 4111.01 *et seq.* ........ 1, 3

43 P.S. § 333.101 *et seq.* ........ 1, 3

## I. INTRODUCTION

This proposed settlement resolves claims that the six Named Plaintiffs and thirty Opt-In Plaintiffs in these consolidated class and collective actions[1] (collectively, "Plaintiffs"), together with approximately 2,767 other individuals employed as exempt Team Leaders ("TLs") and/or exempt Assistant Store Leaders ("ASLs")[2] – comprising the putative members of the collective actions conditionally certified by the Court – were deprived of overtime compensation for all hours worked in excess of 40 in a workweek while they were employed by Defendant, Giant Eagle, Inc. ("Defendant" or "Giant Eagle"), in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Ohio Minimum Wage Act, O.R.C. § 4111.01 *et seq*. ("OMWA"), and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq*. (the "PMWA").[3] *See generally* the *Jones Action*, ECF No. 58 (Amended Complaint – Class and Collective Action) (asserting claims under the FLSA, OMWA, and PMWA on behalf of TLs and TL Trainees employed by Defendant at its "Giant Eagle" branded stores); and the *Fitch Action*, ECF No. 54 (Amended Complaint – Class and Collective Action) (asserting claims under the FLSA, OMWA, and PMWA on behalf of ASLs and ASL Trainees[4] employed by Defendant at its "GetGo" branded stores); *see also* Conway Decl., ¶.[5]

---

[1] The actions include *Fitch, et al. v. Giant Eagle, Inc. d/b/a GetGo Café + Market* (the "*Fitch Action*"), No. 2:18-cv-1534-RJC-CRE (W.D. Pa.) and *Jones v. Giant Eagle, Inc.*, (the "*Jones Action*"), No. 2:18-cv-282-DSC-CRE. Both actions are proceeding before this Court under the Consolidated Civil Action No. 2:18-cv-01534-RJC-CRE. The term "Litigation" (as used in the Agreement) means the consolidated lawsuit entitled *Fitch, et al. v. Giant Eagle, Inc. d/b/a GetGo Café + Market*, United States District Court for the Western District of Pennsylvania, Case No. 2:18-cv-01534-RJC-CRE, as well as all proceedings in the *Jones* Action and *Fitch* Action prior to consolidation. Agreement, ¶1.16.

[2] This also includes individuals employed as TLs and ASLs during the time they underwent training (referred to as "TL Trainees" and "ASL Trainees," respectively).

[3] Plaintiffs and Defendant are referred to collectively as "the Parties." Defined terms in the Parties' Collective Action Settlement and Release ("Agreement") are incorporated herein. The Agreement is attached as Exhibit 1 to the Declaration of Jason Conway ("Conway Decl.,"), filed contemporaneously herewith.

[4] Previously, Giant Eagle referred to GetGo ASLs as "Senior Team Leaders." Beginning in early 2017, the job title was changed to ASL. For purposes of the Parties' proposed settlement, the terms ASL and ASL Trainee are interchangeable with GetGo Senior Team Leader and GetGo Senior Team Leader Trainee.

[5] On October 28, 2020, Judge Eddy recommended conditionally certifying four FLSA collectives, comprised of Defendant's TLs, TL Trainees, ASLs, and ASL Trainees. *See Fitch Action*, ECF No. 199. On February 23, 2021, the

During the relevant time period,[6] Giant Eagle owned and operated more than 400 grocery and convenience stores throughout western Pennsylvania, north central Ohio, northern West Virginia, Maryland and Indiana, including under the "Giant Eagle" and "GetGo" banners. *Fitch Action*, ECF No. 54, ¶37; *Jones* Action, ECF No. 58, ¶¶47-48; Conway Decl,, ¶4. In the case of the *Fitch Action*, Defendant employed salaried TLs, including Plaintiffs Andrew Fitch, Richard D'Alessandro, and Michelle Hutchinson, at GetGo branded stores. *Fitch Action*, ECF No. 54, ¶¶1, 5, 6; *see also* Conway Decl., 5. In the case of the *Jones Action*, Defendant employed salaried ASLs, including Plaintiffs Jordan Jones, Robert Lemus, and Jason Reed, at its Giant Eagle branded stores. *Jones Action*, ECF No. 58, ¶¶1-3; Conway Decl., ¶5. In so doing, the salaried TLs and ASLs did not receive overtime compensation if they worked more than 40 hours in a workweek. *Fitch Action*, ECF No. 54, ¶¶1-4, 8-11, 17, 24, 32, 49-50, 57-58, 61, 78, 81-83, 92, 103, 114; *Jones Action*, ECF No. 58, ¶¶1, 3, 4, 6-10, 19-20, 26-27, 32-33, 52, 54, 60, 62, 71, 74, 76, 85-86, 96-97, 107-108; Conway Decl., ¶5. Plaintiffs alleged that, during the Relevant Period, Defendant's classification of TLs and ASLs as exempt from overtime pay violated the FLSA, OMWA, and PMWA (a contention that Defendant vehemently opposes). *Fitch Action*, ECF No. 54, ¶¶121-186; *Jones Action*, ECF No. 58, ¶¶114-179; Conway Decl., ¶6. Instead, Plaintiffs allege that Giant Eagle should have classified them and all exempt TLs and ASLs as non-exempt and paid them overtime compensation for all hours worked over 40 in a workweek. *Fitch Action*, ECF No. 54, ¶¶5, 50, 53, 64, 132, 142, 156, 165; *Jones Action*, ECF No. 58, ¶¶2, 158; Conway Decl., ¶6.

---

Court adopted Judge Eddy's recommendation and granted conditional certification of the four collectives. *Fitch Action*, ECF No. 208. At the time of reaching the proposed settlement, Plaintiffs had not yet moved for certification of their OWMA and PMWA claims as class actions under Fed. R. Civ. P. 23. The Parties agree that Team Leaders of "pad site" GetGo locations should be treated as TL/TL Trainees within the scope of the *Jones* Action, and the associated TL/TL Trainee collectives.

[6] For purposes of the proposed settlement, the Relevant Period is, in the case of the *Fitch Action*, July 10, 2015 until September 15, 2021 and, in the case of the *Jones* Action, November 22, 2014 until September 15, 2021. *See* Agreement, ¶1.24.

Whether Plaintiffs and the putative members of the four collectives – as well as those covered by any certified classes under Rule 23 – were properly classified as non-exempt under the FLSA, the OMWA, and the PMWA turns on whether or not their "primary duty" was "management." *See* 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(2); O.R.C. § 4111.03 (adopting FLSA exemptions); 43 P.S. § 333.105. Resolution of this issue is unpredictable and, as would be the case here, turns on hotly disputed issues of fact and law. *Compare e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) ("primary duty" of Family Dollar Store Managers is not "management") with *In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011) ("primary duty" of Family Dollar Store Managers is "management"). Throughout these proceedings, Giant Eagle has maintained that its classification of Plaintiffs as overtime-exempt was entirely proper. As clearly emphasized in the Settlement Agreement:

> **"Giant Eagle denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation."**

Agreement, ¶3 (emphasis added). Accordingly, for the reasons outlined below, the Court should respectfully find that this settlement resolves a *bona fide* dispute between the Parties and that the Agreement is fair and reasonable in all respects.

## II. BACKGROUND AND PROCEDURAL HISTORY

As demonstrated by the dockets in the *Fitch* and *Jones Actions*, the Parties have actively litigated these cases in the nearly four years since they were filed. As outlined below, the litigation has involved significant motion practice, both in this Court and elsewhere, and many contentious disputes and hearings.

**A. The *Fitch Action***

The *Fitch Action* was commenced on April 23, 2018, in the United States District Court for the Southern District of Indiana. *Fitch Action*, ECF No. 1; Conway Decl., 10. Fitch asserted claims under the FLSA on behalf of a collective of ASLs employed by Defendant.[7] *Id.* Shortly after it was filed, Defendant filed consecutive motions to dismiss, to stay, to transfer this action to the Western District of Pennsylvania, and for consolidation before the Judicial Panel on Multidistrict Litigation ("JPML"). *Fitch Action*, ECF Nos. 21, 12, 13, 23. The JPML subsequently denied Defendant's motion. *Fitch Action*, ECF Nos. 38. On November 9, 2018, the Parties stipulated to transfer the *Fitch Action* to the Western District of Pennsylvania and agreed to consolidate both the *Fitch* and *Jones Actions* for pre-trial purposes. *Fitch Action*, ECF No. 50; Conway Decl., ¶11. Thereafter, Fitch filed a First Amended Complaint in which he added D'Alessandro and Hutchison as named plaintiffs and asserted Rule 23 claims under the PWMA and OMWA. *See generally Fitch Action*, ECF No. 54; Conway Decl., ¶12.[8] At that time, Giant Eagle renewed its Motion to Dismiss. *Fitch Action*, ECF No. 64; Conway Decl., ¶¶13, 16.

**B. The *Jones Action***

On March 6, 2018, Plaintiff Jones commenced his action for unpaid overtime under the FLSA on behalf of himself and all TLs.[9] *Jones Action*, ECF No. 1; Conway Decl., ¶13. Jones

[7] The Parties engaged in pre-suit settlement discussions to attempt to resolve the claims at issue. Conway Decl., ¶10. As part of those discussions, the Parties entered into a pre-mediation tolling agreement which provided for, among other things, a period of tolling provided Plaintiffs satisfied certain conditions. As is relates to the *Fitch Action*, no pre-suit tolling was applied. *Id*.

[8] In the Amended Complaint, in addition to asserting an FLSA claim, Plaintiffs also asserted PWMA and OMWA claims pursuant to Fed. R. Civ. P. 23. Specifically, Plaintiffs alleged the following on behalf of Defendant's ASLs: (a) unpaid overtime pursuant to PMWA on behalf of a class of ASLs who worked at GetGo locations in Pennsylvania during the time they underwent training ("ASL Trainees"); (b) unpaid overtime pursuant to PMWA on behalf of a class of ASLs who worked at GetGo locations in Pennsylvania after having completed training; (c) unpaid overtime pursuant to OMWA on behalf of a class of ASLs who worked at GetGo locations in Ohio after having completed training; and (d) unpaid overtime on behalf of a collective of ASL Trainees employed at GetGo locations in the United States under the FLSA. Conway Decl., ¶12.

[9] As part of the Parties' pre-suit settlement discussions, they entered into a tolling agreement which extended the statute of limitations in the *Jones Action*. Conway Decl., ¶14.

subsequently filed a First Amended Complaint, in which he added Plaintiffs Lemus and Reed and asserted additional claims under the FLSA and Ohio and Pennsylvania law. *Jones Action*, ECF No. 58; Conway Decl., ¶15.[10] Giant Eagle, again, filed a motion to dismiss. *Jones Action*, ECF Nos. 26, 64; Conway Decl., ¶16.[11] Given the significant motion practice across both actions, Plaintiffs sought – and the Court granted, equitable tolling to protect the claims of the members of the putative FLSA collectives. *Fitch Action*, ECF Nos. 91, 145, 220, 222; *Jones Action*, ECF Nos. 49, 60, 95; Conway Decl., ¶16.[12]

### C. Plaintiffs' Motions for Conditional Certification and Court-Authorized Notice

On January 4, 2019, Plaintiff Fitch moved for conditional certification and court-authorized notice of his FLSA claims. *Fitch Action*, ECF No. 60; Conway Decl., ¶18.[13] The Court subsequently held Plaintiffs' motion in abeyance. *Fitch Action*, ECF No. 67; Conway Decl., ¶18. On December 12, 2019, Plaintiffs moved for conditional certification of their FLSA claims in both

[10] In addition to the claims asserted in the initial Complaint, Plaintiffs also asserted the following on behalf of Defendant's TLs: (a) unpaid overtime pursuant to PMWA on behalf of a class of TLs who worked at Giant Eagle grocery store locations in Pennsylvania during the time they underwent training; (b) unpaid overtime pursuant to PMWA on behalf of a class of TLs who worked at Giant Eagle's grocery store locations in Pennsylvania after having completed training; (c) unpaid overtime pursuant to OMWA on behalf of a class of TLs who worked at Giant Eagle's grocery store locations in Ohio after having completed training; and (d) unpaid overtime on behalf of a collective of TL Trainees employed at Giant Eagle grocery store locations in the United States under the FLSA. *See Jones Action*, ECF No. 58; Conway Decl., ¶15.

[11] The motions to dismiss in both the *Fitch* and *Jones Actions* were ultimately denied. *Fitch Action*, ECF No. 92; *Jones Action*, ECF No. 96; Conway Decl., ¶17.

[12] While Defendant's Motions to Dismiss were pending, the Parties engaged in limited discovery for the purposes of potential settlement discussions. *Fitch* and *Jones Actions,* ECF Nos. 66, 77; Conway Decl., ¶17. Defendant subsequently deposed 13 Plaintiffs and Opt-In Plaintiffs and Plaintiffs deposed three Rule 30(b)(6) designees. Defendant also produced personnel files as well as job descriptions, the employee handbook, and relevant standard operating procedures/policies for its Giant Eagle and GetGo stores. *Id.*

[13] Prior to moving for conditional certification, in late 2019 Plaintiff moved for a protective order to limit Defendant's use of certain "acknowledgment forms" for purposes of determining whether its TLs and ASLs believe or do not believe that they meet Giant Eagle's requirements for salaried leaders. *Fitch Action*, ECF No. 104; Conway Decl., n.7. Plaintiff sought an Order prohibiting Giant Eagle's continued use of the form, and issuance of a curative notice. *Id.* An evidentiary hearing (lasting several hours) was held on Plaintiffs' motion on August 19, 2020. *Fitch Action*, ECF No. 184; Conway Decl., n.7. The Court granted Plaintiffs' motion in part. *Fitch Action*, ECF No. 192 (holding that Giant Eagle could not require exempt TLs and ASLs to take a position on whether they believe they meet the requirements of a salaried, exempt leader and ordering Giant Eagle to issue a curative notice to those ASLs and TLs who signed the form); Conway Decl., n.7. The Parties prepared a joint, proposed curative notice, which was submitted to the Court on October 20, 2020. *Fitch Action*, ECF No. 198; Conway Decl., n.7.

the *Fitch* and *Jones* actions. *Fitch Action*, ECF Nos. 110, 111; Conway Decl., ¶18.[14] After substantial briefing, the Court granted Plaintiffs' motions and certified the following collectives:

(1) All persons who are or were formerly employed by Giant Eagle in the United States during the relevant period as TLs, including individuals holding comparable salaried positions with different titles, and who were classified by Giant Eagle as exempt from overtime compensation;

(2) All persons who are or were formerly employed by Giant Eagle in the United States during the relevant period who participated in Giant Eagle's training program for TLs, and who were classified by Giant Eagle as exempt from overtime compensation;

(3) All persons who are or were formerly employed by Giant Eagle in the United States during the relevant period as STLs, including individuals holding comparable salaried positions with different titles and who were classified by Giant Eagle as exempt from overtime compensation; and

(4) All persons who are or were formerly employed by Giant Eagle in the United States during the relevant period who participated in Giant Eagle's training program for STLs, and who were classified by Giant Eagle as exempt from overtime compensation.

*Fitch Action*, ECF Nos. 199, 208; Conway Decl., ¶19.

### D. Mediation and Parties' Settlement Discussions

Shortly after the Court granted Plaintiffs' motions for conditional certification and court-authorized notice, the Parties agreed to participate in a mediation with experienced wage and hour mediator Carole Katz, Esq. Conway Decl., ¶20. In advance of the mediation and for purposes of calculating alleged damages, Giant Eagle produced additional (extensive) data to Plaintiffs, including payroll and workweek information for the individuals covered by the Court's order

[14] Shortly after moving for conditional certification, Giant Eagle moved for partial summary judgment in both the *Fitch* and *Jones Actions* on the basis that Defendant properly classified its TLs and ASLs as exempt under the FLSA. *Fitch Action*, ECF Nos. 130, 134; Conway Decl., n.8. Additionally, Defendant sought summary judgement as to the claims of Plaintiff Reed and several Opt-In Plaintiffs on the basis that they admitted specific facts in their depositions that independently warranted summary judgment. Because only limited discovery had taken place, Plaintiffs moved to defer ruling on the summary judgment motions pursuant to Rule 56(d) until after full discovery was completed. *Fitch Action*, ECF No. 146; Conway Decl., n.8. The Court subsequently denied Defendant's motions without prejudice, which this Court upheld. *Fitch Action*, ECF Nos. 157, 166, 177; Conway Decl., n.8.

granting conditional certification. *Id*. Thereafter, the Parties prepared and submitted detailed position statements addressing merits and collective-wide damages issues to Ms. Katz. *Id*., ¶21. On June 22, 2021, Ms. Katz presided over an all-day mediation session with the Parties. *Id*., ¶22. While a settlement was not reached, the Parties agreed to participate in additional mediations (on July 30, August 30, and September 3, 2021). *Id*.., ¶23. In addition, the Parties engaged in numerous telephone calls, both individually and with Ms. Katz. *Id*. After exhaustive negotiations, on September 13, 2021, the Parties agreed to settle the matter for a total maximum amount of $4,200,000.00 ("Settlement Amount"), which is inclusive of all amounts payable under the settlement, including the payment of service awards to the named Plaintiffs and several Opt-In Plaintiffs and attorneys' fees and expenses to Plaintiffs' Counsel. Agreement, ¶1.28; Conway Decl., ¶, 23.[15]

## III. TERMS OF THE SETTLEMENT

The material terms of the proposed settlement are straightforward. The $4,200,000.00 Settlement Amount will be distributed as follows:

(i) up to $2,641,981.54 from the Net Settlement Fund[16] will be paid to Plaintiffs, Opt-In Plaintiffs and (a) all exempt ASLs employed by Giant Eagle between July 10, 2015 and September 15, 2021; and (b) all exempt TLs employed by Giant Eagle

[15] As explained below and indicated by Plaintiffs' Counsel's contemporaneous time records, the time spent in discovery (including the depositions of thirteen Plaintiffs and Opt-In Plaintiffs and Defendant's three Rule 30(b)(6) designees), briefing and responding to multiple substantive motions (including objections to several of Judge Eddy's Orders and Reports and Recommendations), participating in an evidentiary hearing, and preparing for and participating in multiple mediations (and exhaustive settlement discussions amongst counsel) was significant. Conway Decl., ¶¶41. The depositions, for example, which took place in-person and occurred in Pennsylvania and Ohio, each lasted several hours, and Giant Eagle produced nearly 3,000 pages of documents consisting of, among other things, personnel records, job descriptions, policies and procedures, training materials, and payroll information. *Id*.

[16] "Net Settlement Fund" means the remainder of the Settlement Amount after deductions/payments for: (i) Court-approved Settlement Administration fees and costs; (ii) Court-approved Plaintiffs' Counsel's attorneys' fees and costs; (iii) Court-approved Service Awards to Named Plaintiffs and several Opt-In Plaintiffs; and (iv) Giant Eagle's share of payroll taxes (the Net Settlement Fund will be slightly reduced once this figure is determined).

between November 22, 2014 and September 15, 2021 ("Collective Members"). Agreement, ¶1.7;

(ii) a combined total of up to $60,000.00 will be paid to Named Plaintiffs and several Opt-In Plaintiffs as service awards in recognition of their contributions to both the litigation and the settlement. *Id.*, ¶¶1.25, 3.3;

(iii) $1,400,000 will be paid to Plaintiffs' Counsel for attorney's fees and $74,018.46 for accumulated costs and expenses. *Id.*, ¶3.2; and

(iv) $24,000.00 will be paid to the Settlement Administrator for purposes of administering the settlement. Agreement. *Id.*, ¶1.27.

The settlement is *not* contingent on the Court's approval of the requested service awards or attorneys' fees, costs or expenses, and any disapproved amounts will be used to enhance the payout amount to each Collective Member. *Id.*, ¶¶1.7, 3.2, 3.3.

### A. Notice of Settlement to Collective Members

If the Court approves the settlement, within five (5) days after the Effective Date,[17] Giant Eagle will provide a Class List[18] to the Settlement Administrator, A.B. Data, Ltd. (an experienced administrator from whom a competitive bid was obtained), for the purpose of, among other things, distributing a Settlement Notice to each Collective Member. Agreement, ¶¶1.30, 2.4(i). Within twenty-one (21) days after the Effective Date, the Settlement Notices will be mailed by First-Class United States Mail (with an enclosed postage paid return envelope) and sent *via* e-mail by the

[17] "Effective Date" means the date on which this Agreement becomes effective, which shall mean the later of (i) 30 days after the Approval Order is final and non-appealable and no appeals have been taken from the Approval Order, or (ii) if an appeal is taken from the Approval Order, 30 days after any such appeal has been resolved, is not subject to further appeal, and the Approval Order has been upheld.

[18] "Class List" means a manipulable-electronic list (e.g., in Excel format) of all Collective Members' names, Last Known Addresses, personal e-mail addresses that are maintained in Giant Eagle's HRIS system, Social Security Numbers, and the dates of employment as an ASL and/or TL during the Relevant Period. The Class List shall also identify the entity (*i.e.*, Giant Eagle or GetGo) for whom each Collective Member worked.

Settlement Administrator. *Id*, ¶2.4(ii).[19] The Settlement Notices will advise Collective Members of the claims asserted in the Litigation, of their estimated Individual Settlement Amounts, and of a website where they can submit their Claim Form and review a copy of the Settlement Notice. *Id*. The Settlement Notice is written in plain and understandable language, and the Settlement Administrator must follow rigorous protocols to ensure that all Settlement Notices are distributed to the proper mail and e-mail addresses. *Id*, ¶2.4(iii). If any Settlement Notice is undeliverable, the Settlement Administrator will perform a standard skip trace (up to 2 times) to attempt to determine the most current mailing address available by that method and shall resend the Notice and Claim and Consent Form to that address. *Id.*

### B. Participation in Settlement by Collective Members

In order to receive their allotted payment, a Collective Member must complete and return a Claim Form to the Settlement Administrator within the Claim Period.[20] Agreement, ¶¶1.4; 2.3(iv).[21]

---

[19] The Settlement Notices are different because the *Fitch* and *Jones Actions* involve job positions with different titles (*i.e.*, TL vs. ASL) and the Relevant Period for each is not the same. For individuals who worked both as TLs and ASLs, the Claims Administrator will mail both Settlement Notices in a single envelope, and will not provide double recovery for any workweeks, but will total the TL workweeks within the TL relevant period and the ASL workweeks within the ASL relevant period to arrive at a single claim for these individuals.

[20] "Claim Period" shall mean: (i) the 60-calendar day period beginning immediately after the Settlement Administrator first mails and e-mails Settlement Notices and Claim Forms to any of the Collective Members; or (ii) for individuals receiving a re-mailing, the longer of the 60-day period or 30 days from the Settlement Administrator's re-mailing, but not to exceed 90 days from the initial mailing. Individuals who timely submit a valid Claim Form will be deemed a "Participating Collective Member," and they will be deemed to have also opted into the Litigation for purposes of the FLSA. Agreement, ¶2.4(iv)(c).

[21] If a Claim Form is returned to the Settlement Administrator and not properly completed as described above, within 5 days of its receipt the Settlement Administrator shall send a notice to the Collective Member *via* First Class United States Mail and e-mail advising the Collective Member of the defects ("Cure Letter") and include a new Claim Form to be completed (with an enclosed, postage paid return envelope). The Collective Member shall then have the remainder of the Claim Period or 15 days from the mailing of the Cure Letter ("Cure Period"), whichever is longer, to return the new Claim Form and provide the missing information. If a corrected Claim Form is not postmarked by and/or received within that period, the Claim Form shall be null and void, unless otherwise agreed to in writing by the Parties or approved by the Court. Agreement, ¶2.4(iv)(b).

### C. Allocation of Payments to Plaintiffs and Collective Members

Each Collective Member who timely executes and submits a valid Claim Form is entitled to receive their pro-rata share of the Net Settlement Fund ("Individual Settlement Amount, Agreement, ¶1.14) based on the number of Eligible Workweeks they were employed as a TL and/or ASL during the Relevant Period. Agreement, ¶3.4.[22] **The average gross settlement amount allocated to each Collective Member from the Net Settlement Amount will be approximately $954.82.** Conway Decl., ¶30. Named Plaintiffs will be not required to submit a Claim Form in order to participate in the settlement. *Id.*, ¶31. Rather, they are covered by the settlement by virtue of having signed the Agreement and previously opting-in to the action pursuant to 29 U.S.C. § 216(b). Conway Decl., ¶31.

Within thirty (30) days of the Effective Date, Giant Eagle will deposit Settlement Amount into a Qualified Settlement Fund ("QSF") for purposes of distributing the amounts provided for under the settlement. Agreement, at ¶3.1. Within seven (7) days after the receipt of the Settlement Amount into the QSF, the Settlement Administrator will distribute, among other things, any Court-approved Service Awards. *Id*. Within twenty-one (21) days after the close of the Claim Period or Cure Period, whichever is later, the Settlement Administrator will mail the Settlement Checks to each Participating Collective Member. *Id*. The settlement sets forth that fifty percent (50%) of all payments shall be treated as back wages, will be subject to W-2 reporting, and normal payroll taxes and withholdings will be deducted pursuant to state and federal law by the Settlement Administrator. *Id*, ¶3.4(vi). The settlement also provides that the remaining fifty percent (50%) shall be treated as payment of interest, any applicable penalties, liquidated damages, and other

---

[22] "Eligible Workweeks" means weeks in which a Collective Member was employed by Giant Eagle as (a) an exempt ASL between July 10, 2015 and September 15, 2021; or (b) as an exempt TL between November 22, 2014 and September 15, 2021. Workweeks during which a Collective Member was not employed by Giant Eagle as an ASL or TL or was not classified as exempt are not considered Eligible Workweeks. Agreement, ¶1.12.

non-wage relief. *Id*. After the expiration of one hundred and twenty (120) days following the issuance of checks to the Participating Collective Members, the amount of any check not cashed shall be returned to Giant Eagle. *Id*., ¶¶1.3, 3.4(v).

**D. Release of Claims by Collective Members**

All Participating Collective Members will be bound by a limited release of "all claims for unpaid wages, overtime, failure to pay timely wages, wage statement violations, and other compensation, fees/costs, liquidated damages, penalties, interest, and all other relief under the FLSA and all other state and local wage/hour and wage payment laws and common law theories arising or accruing while employed by Giant Eagle as an exempt ASL or TL at any point through September 15, 2021, that they have or may have, whether known or unknown, against Giant Eagle, including its former and present officers, directors, employees, attorneys, insurers, benefit plans, predecessors, successors, parents, sponsors, related entities, subsidiaries, and affiliates" ("Released Claims"). Agreement, ¶4.1.[23] If a Collective Member does not return a Claim Form, they will not release any claims arising out of their employment with Defendant, including for unpaid overtime compensation. *Id*, ¶4.2.

**E. Settlement Administrator**

The parties have agreed to use A.B. Data, Ltd. as the Settlement Administrator and to discharge, under counsel's direction and oversight, the Settlement Notice and settlement procedures prescribed by the Agreement. Agreement, ¶2.2. Following approval, the Settlement Administrator's duties include, among other things: (1) formatting, printing, and mailing the Settlement Notice to the Collective Members; (2) processing returned Claim Forms; (3) performing required skip traces; and (4) otherwise communicating with the Parties' respective

[23] In addition, in exchange for accepting and receiving an approved Service Award, all Service Award recipients shall execute a general release. Agreement, ¶4.3.

Counsel. During the sixty (60) day notice period, the Settlement Administrator will be responsible for answering or otherwise responding to any questions or inquiries from the Collective Members regarding the settlement. The Settlement Administrator will also be responsible for calculating the settlement allocation for each Collective Member and distributing Individual Settlement Amounts to Participating Collective Members. Agreement, at ¶2.2. The Parties will work with the Settlement Administrator to take all necessary steps to ensure that the settlement is administered in accordance with the Agreement. The costs of the Settlement Administrator will be paid from the Settlement Amount. Agreement, ¶3.1.

**F. Service Awards to Plaintiffs and Collective Members**

Plaintiffs also request payment of Service Awards to the Named Plaintiffs, as well as any Collective Member who was deposed or testified at a hearing in connection with the Litigation (representing thirteen (13) individuals), not to exceed a combined total of $60,000. Agreement, ¶3.3. The service awards are in addition to the Individual Settlement Amounts each stand to receive. Given their substantial contributions throughout this litigation, and the significant risk to their reputation and future employment, Plaintiffs submit that the Service Awards are reasonable. The settlement is not contingent upon the Court's approval of the Service Awards. Agreement, ¶3.3(ii). In exchange for receiving and accepting the Service Awards, all Service Award recipients shall execute a general release. *Id.*, at ¶4.3. The Named Plaintiffs and Service Award recipients have agreed to the foregoing conditions.

**G. Attorneys' Fees, Costs and Expenses**

The Parties have also agreed to the payment to Plaintiffs' Counsel of attorney's fees, costs, and expenses in an amount approved by the Court and not to exceed a total of $1,474,018.46. Agreement, ¶3.2. The settlement is not contingent upon the Court's approval of Plaintiffs'

Counsel's attorneys' fees, costs, and expenses and, to the extent that such amounts are not approved by the Court, shall become part of the Net Settlement Fund and included in the amounts to be distributed to the Participating Collective Members who execute and return timely Claim Forms. *Id*.

## IV. <u>LEGAL ARGUMENT</u>

### A. The Court Should Approve this FLSA Settlement

The Third Circuit has not addressed whether FLSA actions claiming unpaid wages may be settled privately prior to obtaining judicial approval. Absent such guidance, district courts within this Circuit have routinely adopted the majority position and required judicial approval as a precondition to resolution of FLSA claims. *See, e.g.*, *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-0cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *2 (W.D. Pa. Oct. 22, 2019) (Ranjan, J.); *Confair v. Charles P. & Margaret E. Polk Found*., No. 1:17-CV-0674, 2018 U.S. Dist. LEXIS 76434, at *2-3 (M.D. Pa. May 7, 2018); *Mitchell v. People for People Charter Sch., Inc*., No. 17-2416, 2018 U.S. Dist. LEXIS 72691, *3 (E.D. Pa. Apr. 27, 2018); *see also Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016); *Bettger v. Crossmark, Inc*., No. 13-cv-2030, 2015 U.S. Dist. LEXIS 7213, 2015 WL 279754, *3 (M.D. Pa. Jan. 22, 2015) (collecting cases).

Courts typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982) when evaluating proposed FLSA settlement agreements. *See, e.g.*, *Confair*, 2018 U.S. Dist. LEXIS 76434, at *2-3. Under *Lynn's Food Stores*, a proposed compromise may satisfy judicial review if it is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. When a reviewing court is satisfied that the agreement in fact resolves a *bona fide* dispute, it proceeds in two phases: first, the court assesses whether the parties' agreement is

fair and reasonable for the employees; second, it determines whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace. *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *3; *see also Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016). Courts view the adversarial nature of an FLSA case to be an indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54; *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *6. In light of these standards, approval of the settlement agreement is eminently appropriate.

**B. The Settlement Resolves a *Bona Fide* Dispute Between the Parties**

A dispute is "*bona fide*" where it involves "factual issues rather than legal issues such as the statute's coverage and applicability." *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *4 (citing *Kraus*, 155 F. Supp. 3d at 530); *see also Creed v. Benco Dental Supply Co*., No. 12-01571, 2013 U.S. Dist. LEXIS 132911, *1 (M.D. Pa. Sept. 17, 2013). As a result, the Court needs to "consider the substantive allegations and determine whether factual issues, specific to these parties, are actually in dispute." *Deitz v. Budget Renovations & Roofing, Inc*., No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, at *8 (M.D. Pa. May 29, 2013). A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as … back wages, that are actually in dispute" and not a "mere waiver of statutory rights brought about by an employer's overreaching." *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *2; *see also Haley*, 2019 U.S. Dist. LEXIS 72365, at *9 (citing *Lynn's Food Stores*, 679 F.2d at 1355).

Here, the existence of a *bona fide* dispute is clear: Giant Eagle maintains that its classification of Plaintiffs and its TLs and ASLs as exempt from overtime compensation was proper and that, if it had violated the FLSA, OMWA, and PMWA, it did not do so willfully (as alleged by Plaintiffs). Giant Eagle also disputes the number of hours Plaintiffs claimed to have

worked each week, and whether a two or three-year statute of limitations applies. In addition, multiple disputed questions of fact and law exist, the work performed by Plaintiffs, the proper standards for willfulness and good faith, and how damages are determined. *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *5-6 (finding bona fide dispute existed in FLSA misclassification case where the parties disputed, among other things, the plaintiff's employment and the defendants' pay practices and state of mind).[24] Accordingly, the Court should respectfully find that the Parties' proposed settlement resolves a bona fide dispute of factual issues rather than legal issues and, therefore, should be approved.[25]

### C. The Settlement Is Fair and Reasonable

In determining whether FLSA settlements are fair and reasonable federal courts in the Third Circuit consider: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (applying nine-factor test to evaluate the fairness of a class action settlement); *see also Lyons v. Gerhards, Inc.*, No. 14-06693, 2015 U.S. Dist. LEXIS 92348, *9-10 (E.D. Pa. July 16, 2015) (applying the nine-factor test in *Girsh* to

[24] *See also Waltz Aveda Transp. & Energy Servs.*, No. 4:16-CV-00469, 2017 U.S. Dist. LEXIS 105310, at *4-5 (M.D. Pa. July 7, 2017) (finding in FLSA action that disagreements over exempt-status, willfulness, and hours worked by the plaintiffs clearly established a bona fide dispute); *Potoski*, 2020 U.S. Dist. LEXIS 5765, at *6-7 (finding bona fide dispute existed where the parties maintained, through litigation and eventual settlement, opposing views as to whether the plaintiff was properly compensated under the FLSA).

[25] This Court recently approved a settlement in a retail assistant manager misclassification case on similar terms to those here. *McGhee, et al. v. TOMS King, et al*, No. 2:19-cv-1470-RJC (W.D. Pa.) (ECF No. 80).

evaluate the fairness of an FLSA settlement); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-cv-6820, 2014 U.S. Dist. LEXIS 30366, at *7-8 (E.D. Pa. Mar. 7, 2014) (same). Here, all nine factors weigh in favor of approval.

**1. The Complexity, Expense and Duration of the Litigation**

Plaintiffs' Counsel's experience in analogous wage and hour actions informs that, absent a settlement, the continued litigation of this case would be burdensome, time-consuming and expensive for the Parties, and they will need to devote time and considerable resources to discovery (including taking and defending depositions), a potentially lengthy trial, post-trial briefing, and appellate proceedings. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d. Cir. 1998)) (finding that the complex nature of the case, the high expenses and likelihood of years passing without resolution weighed in favor of settlement); *Kritzer v. Safelite Solutions, LLC*, No. 10-v-0729, 2012 U.S. Dist. LEXIS 74994, 21-22 (S.D. Ohio May 30, 2012). The action would also have burdened the Court and strained its resources, as discovery would have been extensive and likely contentious (requiring Court intervention), and the Parties would inevitably have engaged in significant motion practice (not only with respect to potential discovery disputes, but as to collective action certification, final certification/decertification of any conditionally certified collective action, and dispositive motions). *See Doe v. Deville*, 257 F.3d 309, 322 (3d. Cir. 2001) ("The law favors settlement, particularly in class actions and other complex cases, to conserve judicial resources.").

**2. The Reaction of the Class to the Settlement**

Should the Court approve the settlement, the Settlement Notice will be sent to the Collective Members advising them of their estimated recovery and providing them with an opportunity to join this action and participate in the settlement. The Settlement Notice is written

in plain English and clearly explains the steps that Collective Members need to take to join (or not join) the settlement, and Collective Action Members have been provided with a liberal time period (60 days) to return their completed Claim Forms. Plaintiffs' Counsel expects a positive reaction from the Collective Members to the settlement, particularly given their anticipated payout amounts which come in the midst of the COVID-19 pandemic, and Plaintiffs wholeheartedly approve of the settlement. Conway Decl., ¶29. Accordingly, this factor also weighs in favor of approval.

#### 3. The Stage of the Proceedings and Amount of Discovery Completed

In determining whether this factor weighs in favor of approval, the Court should ascertain whether the case has progressed to a point where the Parties have sufficient knowledge to reasonably determine that settlement is in the Parties' best interest. Here, the settlement was reached more than three (3) years after the *Fitch* and *Jones Actions* were commenced, following substantial motion practice, and only after several months of exhaustive negotiations, including three separate mediations involving an experienced wage and hour mediator, Carole Katz, and which involved a sufficient investigation and exchange of information by the Parties both prior to, during and after each mediation, to allow counsel to act intelligently in negotiating and agreeing to this settlement. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *23-24. Arm's length negotiations conducted by competent counsel constitute prima facie evidence of a fair settlement. *Confair*, 2018 U.S. Dist. LEXIS 76434, at *5 (approving settlement that was by-product of arm's length negotiations between two represented parties); *see also Pritchard v. Bimbo Bakeries USA, Inc.*, No. 3:17-cv-01083-ARC, 2018 U.S. Dist. LEXIS 146328, at *2 (M.D. Pa. Aug. 23, 2018) (same).

Giant Eagle provided Plaintiffs with employment and payroll data for the TL and ASL positions, including the TL Trainee and ASL Trainee positions, which allowed counsel to make reasonable calculations of the potential damages in the case. During the course of discovery, Giant

Eagle also provided job descriptions and other materials which allowed Plaintiffs to evaluate Defendant's classification decision and weigh the merits of its defenses. In addition, both during and subsequent to the mediation sessions, Giant Eagle raised a number of legal and factual issues which Plaintiffs' Counsel considered in concluding that settlement on the terms negotiated by counsel is in the best interest of Plaintiffs and the Collective Members. Conway Decl., ¶27; *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *11-12.

### 4. The Risks of Establishing Liability and Damages[26]

Litigation of the central issues in this case – Plaintiffs' entitlement to overtime compensation – would continue to have involved fact intensive questions that depended on favorable legal determinations and a potentially adverse jury. This is not inconsequential, as the Court or jury may ultimately find that, based on the evidence obtained during discovery, Plaintiffs performed managerial duties and were properly classified by Defendant as exempt. In addition, Defendant indicated that its classification of Plaintiffs was made in good faith and was not willful and, accordingly, would have sought to limit the time period applicable to Plaintiffs' FLSA claims – from three years to two years. *Id.* (finding that the plaintiffs "face[d] the risk of a limited recovery, even if liability were otherwise successfully established."). Here, there are significant risks for Plaintiffs and the Collective Action Members (as well as Defendant) if this case was not settled.

In a misclassification wage and hour case like this one, there are inevitably multiple disputed questions of fact and law, including the job duties performed and hours worked by Plaintiffs, whether Plaintiffs spent the majority of their time completing non-management or management work, whether Plaintiffs were properly classified as exempt from overtime under the

[26] *Girsch* factors (4) and (5) will be discussed together.

FLSA, and whether Defendant willfully violated the FLSA. Coupled with conflicting court decisions regarding the applicability of FLSA exemptions to retail assistant manager claims cases, Plaintiffs faced an uphill battle in order to prevail on their claims.

Similarly, forecasting an outcome is not nearly as simple as estimating the risk of prevailing on the merits and adding some measure of litigation risk. For example, the estimated potential recovery by Plaintiffs must account for a large number of legal and factual contingencies, such as how many hours the average employee worked, how many weeks per year the average employee worked those hours, whether the employees can obtain a third year of damages under the FLSA (a question of willfulness), and whether the employees can obtain liquidated damages under the FLSA (a question of good faith). These are fact intensive questions that also depend on favorable legal determinations and when misclassification cases reach juries, the results can be unpredictable.[27] *See also Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20-21 (approving settlement where the plaintiffs' "likelihood of success was far from certain" and noting that the lower the likelihood the more desirable the settlement) (citation omitted); *Kraus*, 155 F. Supp. 3d at 532 (approving settlement of plaintiff's FLSA claims "in light of the significant weaknesses" in her case).

### 5. The Risk of Maintaining the Action Through to Trial

The risk of maintaining this conditionally certified collective action and putative Rule 23 class action through to trial cannot be overstated. Coupled with a contested collective and class action certification process, including competing motions for final certification/decertification of

---

[27] *Compare, e.g., Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir. 2008) (plaintiffs' verdict); *Stillman v. Staples, Inc.*, No. 07-849, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (same); *Joseph Strauch et al. v. Computer Sciences Corporation,* No. 3:14-cv-00956 (D. Conn.) (same) with *Perkins v. Southern New England Telephone Co Inc.* No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) (defendant's verdict); *Henry v. Quicken Loans, Inc.,* Case No. 4-cv-40346 (E.D. Mich. 17, 2011) (same); *Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa.) (Apr. 21, 2013) (same).

any conditionally certified collective action and certification of Plaintiffs' OWMA and PMWA Rule 23 claims, as well as likely dispositive motion practice, the certainty of the favorable result achieved for Plaintiffs and the Collective Action Members through the settlement is all the more appealing.[28] Moreover, because a settlement dispenses with the need for a potential trial, federal courts have found the utility of this factor minimal at best. *See e.g.*, *In re NFL Players Concussion Injury Litig*., 821 F.3d 410, 440 ("In a settlement class, [the sixth *Girsch*] factor becomes essentially toothless because a district court need not inquire whether the case, if tried, would present intractable management problems[,] . . . for the proposal is that there be no trial") (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig*., 148 F.3d. at 440). Therefore, this factor also weighs in favor of approval. *Mabry*, 2015 U.S. Dist. LEXIS 112137, at *5 (approving FLSA settlement where "resolution of [the FLSA] claims via trial would be expensive and difficult for Plaintiff").

**6. The Ability of Defendant to Withstand a Greater Judgment**

There is no evidence to suggest that Defendant is unable to pay more than the settlement amount. *Tavares v. S-L Distrib. Co.*, No. 13-cv-1313, 2016 U.S. Dist. LEXIS 57689, *34 (M.D. Pa. May 2, 2016). Rather, and to the contrary, the risk of non-payment to Plaintiffs and the Collective Members is self-evident: the complexity of the overtime exemptions at issue, the possibility of summary judgment and decertification of any conditionally certified collective action, the potential failure at trial, and likelihood of an appeal in the event of a favorable trial

[28] *See, e.g., McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-3569, 2017 U.S. Dist. LEXIS 33335 (E.D.N.Y. Mar. 7, 2017) (report and recommendation decertifying retail manager FLSA misclassification collective action), *adopted by* 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333, 2017 U.S. Dist. LEXIS 62902 (S.D.N.Y. Mar. 29, 2017) (decertifying restaurant manager FLSA misclassification collective action); *Stevens v. HMS Host Corp*., No. 10 CV 3571, 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 26, 2014) (decertifying retail sale FLSA misclassification collective action); *Hernandez v. The Fresh Diet*, No. 12-cv-4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 26, 2014) (decertifying misclassification collective action); *Tracy v. NVR, Inc.,* 293 F.R.D. 395 (W.D.N.Y. 2013) (decertifying outside contractor collective action); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying retail store manager collective action).

outcome, indicate that Plaintiffs and Collective Members are at risk for non-payment. *See Brown v. Progressions Behavioral Servs*., No. 16-6054, 2017 U.S. Dist. LEXIS 108487, at *16 (E.D. Pa. July 13, 2017). While Defendant may have been able to withstand a greater judgment, had Plaintiffs not prevailed on the merits of their claims there would be *no* judgment at all to satisfy. Accordingly, this factor weighs in favor of approving the settlement.

**7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery**

"Settlement represents a compromise in which the highest hopes of recovery are yielded in exchange for certainty and resolution and courts should guard against demanding too large a settlement based on the courts view of the merits of the litigation." *In re Safety Components Int'l, Inc. Sec. Litig*., 166 F. Supp. 2d 72, 92 (D.N.J. 2002) (internal citation omitted). As one court has observed, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Here, the $4,200,000.00 common fund settlement achieves what Plaintiffs and Plaintiffs' Counsel believe is an excellent result which provides Participating Collective Members with an average gross settlement payment of $954.82 to compensate them for their unpaid overtime while working at Giant Eagle (after reductions for employer payroll taxes, and payment of the Service Awards, attorneys' fees and costs, and the cost of the Settlement Administrator). This recovery assures that Collective Members will promptly receive cash compensation for their claims. Given these circumstances, this factor favors approval of the settlement.

**8. The Range of Reasonableness of the Settlement in Light of the Attendant Circumstances**

In contrast to the risks presented by continued litigation, the settlement certainly represents a favorable result for Plaintiffs and the Collective Members who, as noted above, faced uncertainty

and delay in proceeding with this litigation through collective action certification and dispositive motion practice. Furthermore, the settlement involved arm's-length negotiations between counsel with substantial experience in FLSA collective action litigation following extensive pre-mediation discovery and a full day mediation and was reached only after the Parties vigorously attempted to secure the most desirable outcome for their respective clients. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, *23-24. Plaintiffs' Counsel drew on their substantial experience in analogous wage and hour cases in order to provide Plaintiffs and the Collective Members with a high degree of expertise in this field. Conway Decl. ¶¶33-37.[29]

Significantly, the proposed settlement allocations to Plaintiffs and the Participating Collective Members were derived from alleged damages which were calculated with the same formula, based on each Plaintiff's and Participating Collective Member's weeks worked, among other things. Conway Decl. ¶26. The settlement also represents a well-reasoned compromise regarding a number of unsettled issues in this case, including the overtime rate applicable to Plaintiffs' claims, noting that Defendant will likely have argued that the fluctuating work week method of calculating damages applies because Plaintiffs allegedly agreed to receive set compensation in exchange for working their prescribed hours. Accordingly, there is no doubt that "the compensation afforded by the proposed Agreement is fair." *Kraus*, 155 F. Supp. 3d at 532. In light of all the circumstances, the relief afforded by the settlement is fair and reasonable and warrants approval.

[29] In considering the fairness of the settlement, Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *8 ("The Court thus begins with a strong presumption that the settlement counsel has forged through extensive, adversarial negotiation is reasonable."); *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *22-23 (approving FLSA settlement and "defer[ring] to the judgment of experienced trial counsel" where, as here, documentary discovery informed the Parties' settlement negotiations).

### D. The Settlement Furthers the Implementation of the FLSA

The Court must lastly determine whether the Agreement furthers or impermissibly frustrates the implementation of the FLSA in the workplace. *See, e.g., Mabry*, 2015 U.S. Dist. LEXIS 112137, at *3-4. Because the terms of the Agreement are narrowly tailored, Plaintiffs submit that they further the implementation of the FLSA in the workplace. Significantly, there is no confidentiality provision and the Parties are not submitting the Agreement under seal – common pitfalls that many courts are loath to accept. *See Weismantle v. Jali*, No. 13-1087, 2015 U.S. Dist. LEXIS 53435, at *2 (W.D. Pa. Apr. 23, 2015) (denying motion to seal FLSA settlement agreement).

The Agreement also includes a limited release of any potential further claims by Participating Collective Members against Defendant for "all claims for unpaid wages, overtime, failure to pay timely wages, wage statement violations, and other compensation, fees/costs, liquidated damages, penalties, interest, and all other relief under the FLSA and all other state and local wage/hour and wage payment laws and common law theories arising or accruing while employed by Giant Eagle as an exempt ASL or TL at any point through September 15, 2021 …" Agreement ¶4.1. Such a narrowly tailored release does not frustrate the implementation of the FLSA. *See Fein v. Ditech Fin., LLC*, No. 16-cv-00660, 2017 U.S. Dist. LEXIS 158479, at *22-23 (E.D. Pa. Sept. 27, 2017) (approving settlement agreement with release limited to the claims at issue in the action). Accordingly, the Agreement does not frustrate implementation of the FLSA in the workplace and should be approved.

**E. The Proposed Settlement Notice is Proper**

The Court should also approve the proposed Settlement Notices. Agreement, Ex. B. The Settlement Notices sufficiently inform eligible Collective Members of their allocated recovery, the steps they must follow to participate, the consequences of non-participation, the monetary amount to which they are entitled under the Agreement, the scope and mechanism of the release of claims, the request for attorney's fees and expenses, and other terms of the Agreement. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). The Settlement Notices provide timely and accurate notice of the collective action so that each Collective Member has the opportunity to make an informed decision regarding whether to opt-in to the settlement, and the mechanism for opting-in is neither onerous nor burdensome.

**F. The Service Awards Should Be Approved as Fair and Reasonable**

The Agreement provides for payment of service awards of up to $60,000 to the Named Plaintiffs and the Collective Members who were deposed or testified at a hearing in connection with the Litigation (representing thirteen (13) individuals). Agreement, ¶3.3. These awards recognize the time and effort that these individuals expended in furtherance of the litigation and settlement of this matter, including informing Plaintiffs' Counsel of the facts initially, providing information and documents about Giant Eagle's operations, participating in innumerable conferences, reviewing documents, preparing and sitting for a deposition lasting several hours, regularly communicating with their attorneys, conferring about the settlement, and assisting with the damages analyses. Conway Decl., ¶32. The Third Circuit has explained that service (or incentive) awards to named plaintiffs in class actions exist "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d. Cir. 2011).

Indeed, "[c]ourts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation" (*Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *33) and service awards are routinely granted in FLSA actions (*Wojtaszek v. Bald Eagle Fuel & Tire, Inc*., No. 4:17-cv-01888-RDM, 2018 U.S. Dist. LEXIS 207030, at *2 (M.D. Pa. Nov. 28, 2018)), including in amounts ranging from $2,500 to $10,000.[30] Here, the requested service awards are justified by Plaintiffs' efforts to achieve a recovery on behalf of the Collective Members. Thus, the proposed service awards are appropriate.

**G. The Settlement Administrator's Fees and Expenses Should Be Approved**

Plaintiffs' Counsel seeks payment of the Settlement Administrator's fees and expenses totaling approximately $24,000. In Plaintiffs' Counsel's experience, this is a reasonable amount for the administration of a settlement of this size. Accordingly, Plaintiffs request that the Court approve A.B. Data, Ltd. as the Settlement Administrator and also approve the payment of its fees and costs from the Settlement Amount.

**H. Attorney's Fees and Costs Should Be Approved as Fair and Reasonable**

Plaintiffs request approval of payment of one-third of the common settlement fund, or $1,400,000.00, as full and complete satisfaction of any claim for attorneys' fees by Plaintiffs, in addition to $74,018.46 as reimbursement of Plaintiffs' Counsel's costs and expenses. Agreement ¶3.2.[31] Plaintiffs' Counsel is seeking this award in lieu of attorneys' fees and reimbursement of expenses that they might otherwise have been entitled to recover under 29 U.S.C. § 216(b) had

---

[30] *See e.g.*, *Pritchard*, 2018 U.S. Dist. LEXIS 146328, at n.1 (approving $10,000 service awards to three plaintiffs); *Potoski*, 2020 U.S. Dist. LEXIS 5765, at *19-20 (approving $6,000 service awards to two plaintiffs); *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *25-26 (approving $2,500 service awards six plaintiffs); *see also Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *33-34 (approving $5,000 service awards and collecting cases demonstrating approved service awards ranging in amounts from $2,500 to $12,500).

[31] As noted, Plaintiffs' Counsel has incurred costs and expenses totaling $74,018.46.

they ultimately prevailed in this lawsuit. As a result, and because the settlement agreement "creates a pool of money from which attorneys' fees will be awarded," the Court should analyze Plaintiffs' request for attorney's fees using the percentage-of-recovery method. *McGee*, 2014 U.S. Dist. LEXIS 75480, at *12. The "percentage of recovery" method is the prevailing method used by courts in both Pennsylvania and the Third Circuit for wage and hour cases. *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 300 (3d. Cir. 2005) (reviewing class counsel's fees under the percentage of recovery method "is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure"); *see also Kraus*, 155 F. Supp. 3d at 533;.[32] It is also more appropriate to use the percentage-of-recovery method where, as here, the settlement releases Defendant from both damages and attorneys' fees. *Brown*, 2017 U.S. Dist. LEXIS 108487, at *14 (citation omitted). This method awards "a fixed portion of the settlement fund to counsel." *Kraus*, 155 F. Supp. 3d at 533.[33]

When evaluating the appropriateness of an attorney's fee award under the percentage-of-recovery method, the Court must consider the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the

[32] The percentage of recovery method is to be distinguished from the loadstar method for calculating attorney's fee. *See also Mitchell v. People for People Charter Sch., Inc*., No. 17-2416, 2018 U.S. Dist. LEXIS 72691, at *7 (E.D. Pa. Apr. 27, 2018), noting that the "lodestar method is more commonly applied in fee-shifting cases … where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig*., 148 F.3d at 333). This concern is not present here.

[33] In common fund settlements, including under the FLSA, courts often use the lodestar formula as a cross-check to determine the reasonableness of an award of attorneys' fees. The loadstar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001). Here, Plaintiffs' Counsel has dedicated 3,116.85 attorney hours to this litigation representing $1,844,102.50 in lodestar. Conway Decl., ¶48. This is $444,102.50 *less* than Plaintiffs' Counsel's requested fee award, representing a negative return on the total hours invested by counsel in this case.

> litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.[34]

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). "Each case is different, and in certain cases, one factor may outweigh the rest." *Id.*

**1. The Size of the Fund**

The settlement provides a significant benefit to Plaintiffs and Participating Collective Members through the creation of a $4,200,000.00 settlement fund which may benefit nearly 3,000 current and former TLs and ATLs who worked for Defendant during the Relevant Period and provide Participating Collective Members with average gross payments of $954.82. This represents an immediate recovery of a fair portion of the overtime compensation which Plaintiffs and Participating Collective Members could expect to prove at trial. *Fein*, 2017 U.S. Dist. LEXIS 158479, at *32 (finding this factor weighed in favor of approval of attorneys' fees where settlement provided for common fund of $1.38 million for the benefit of 279 people); *see also In re Greenwich Pharm. Sec. Litig.*, 1995 U.S. Dist. LEXIS 5717, *14 (E.D. Pa. Apr. 26, 1995) (approving settlement which provided only 4.3% of best possible recovery); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving settlement which provided only 5.2% of best possible recovery). Based on the aforementioned, this factor weighs heavily in favor of approving the settlement.

**2. The Presence or Absence of Objections to the Fee Award**

While the Settlement Notice has not yet been mailed, Plaintiffs' Counsel expects that Collective Members will approve of the fee award to Plaintiffs' Counsel in light of the results obtained on their behalf. Plaintiffs overwhelmingly approve the terms of the settlement and do not

[34] *Gunter* factor (4) was evaluated as part of the analysis of the fairness and reasonableness of the settlement. *See* pp.14, 18.

object to an award of attorneys' fees that is, tellingly, within the range of standard contingency fee rates in the Third Circuit, which is approximately 19-45%.[35] Accordingly, this factor also weighs in favor of the requested fee award.

### 3. The Skill and Efficiency of Plaintiffs' Counsel

Plaintiffs' Counsel has substantial experience litigating wage and hour class/collective actions such as this. Conway Decl. ¶¶33-36 (describing Plaintiffs' Counsel's experience in multiple high-profile wage and hour actions across the country in the last dozen years); *see also* Declaration of Camar R. Jones ("Jones Decl."), ¶¶1-10 (attached as Exhibit 2 to the Declaration of Jason Conway); Declaration of Daniel C. Levin ("Levin Decl."), ¶¶1-11 (attached as Exhibit 3 to the Declaration of Jason Conway). The claims and defenses at issue, including the applicability of the FLSA and PWMA exemptions, whether Defendant willfully violated the FLSA, and the proper method to apply to determine the overtime compensation owed to Plaintiffs and the Collective Members, were hotly contested by the Parties, including during the Parties' mediations, and further demonstrates that Plaintiffs' Counsel is well-versed in wage and hour litigation. Moreover, Plaintiffs' Counsel took on this case and engaged in a settlement that provided Plaintiffs and Participating Collective Members with significant monetary relief. The $4,200,000.00 common settlement fund was created after years of extensive litigation and months of exhaustive negotiations. By any measure, the settlement is an exceptional result. *Cullen v. Whitman Med.*

[35] *See e.g.*, *Rouse v. Comcast Corp.*, No. 14-1115, 2015 U.S. Dist. LEXIS 49347, at *29 (E.D. Pa. 2015) (allowing percentage-of-recovery for attorney's fees at roughly 35%); *Lyons*, 2015 U.S. Dist. LEXIS 92348, at *13 (same, 44%);; *In re Chickie's & Pete's*, 2014 U.S. Dist. LEXIS 30366, at *30 (same, 28%); *Dino v. Pennsylvania*, No. 1:08-cv-01493, 2013 U.S. Dist. LEXIS 174329, at *12 n.1 (E.D. Pa. 2013) (same, 31%); *Brumley*, 2012 U.S. Dist. LEXIS 40599, at *29-30 (same, 33.3%); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313-14 (E.D. Pa. 2012) (same, 33%); *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 U.S. Dist. LEXIS 38663, at *52, 68 (D.N.J. Apr. 8, 2011) (same, 32.6%); *Williams v. Aramark Sports, LLC*, No. 10-1044, 2011 U.S. Dist. LEXIS 102173, at *32 (E.D. Pa. 2011) (same, 33%); *see also Rite Aid*, 396 F.3d at 306-07 (review of 289 settlements demonstrates "average attorney's fees percentage [recovery of] 31.71%" with a median value that "turns out to be one-third").

*Corp*., 197 F.R.D. 136, 149 (E.D. Pa. 2000) (finding "the single clearest factor reflecting the quality of class counsel's services to the class are the results obtained.").

**4. The Amount of Time Devoted to the Case by Plaintiffs' Counsel**

Plaintiffs' Counsel maintains contemporaneous time records indicating that as of November 1, 2021, it has expended approximately 3,116.85 hours on this matter. Conway Decl. ¶48; Jones Decl.¶11; Levin Decl. ¶12.[36] This time does not include the additional hours Plaintiffs' Counsel anticipates spending on the case going forward including, among other things, overseeing the administration of the settlement and responding, invariably, to questions from the Collective Members. Conway Decl., ¶49. Thus, this factor heavily favors approval of Plaintiffs' Counsel's requested fee award. *Fein*, 2017 U.S. Dist. LEXIS 158479, at *34 (approving fee award where plaintiff's counsel spent considerable time, among other things, "reviewing employee wage and hour data and preparing for and attending the mediation session that led to the settlement.").

**5. The Risk of Non-Payment**

Plaintiffs' Counsel's fee request is reasonable in light of the contingent nature of the representation and the fact that the risks of failure are extremely high. Conway Decl. ¶38; *see In re Ikon*, 194 F.R.D. at 194 ("there are inherent, substantial risks entailed in undertaking any contingency fee action"); *In re Lucent Techs., Inc*., 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("the intrinsically speculative nature of this contingent fee case enhances the risk of non-payment). Here, because there was no promise or guarantee of recovery to Plaintiffs' Counsel, this factor weighs heavily in favor of awarding the requested fee.

---

[36] Plaintiffs' Counsel spent significant time investigating and exploring the merits of the Parties' claims and possible defenses, reviewing documents and information, briefing multiple motions, taking and defending depositions, preparing for and participating in numerous conferences and hearings with the Court, including a several-hour evidentiary hearing, preparing for and participating in several full-day mediations, as well as extensive discussions with Defendant's Counsel which, ultimately, led to the current settlement being reached (and preparation and submission of the instant motion). Conway Decl., ¶41.

## V. CONCLUSION

Based on the above, the Court should, respectfully, (1) approve the Agreement, including the Release of Claims set forth therein, as a fair and reasonable resolution of a *bona fide* dispute between the Parties as to Defendant's liability under the FLSA; (2) approve the proposed Settlement Notice; (3) approve payment of the requested Service Awards; (4) approve A.B. Data, Ltd. as the Settlement Administrator and payment of its costs; (5) approve Plaintiffs' Counsel's request for payment of attorneys' fees and expenses; (6) dismiss the Action with prejudice; and (7) retain jurisdiction over this matter for purposes of enforcing the Agreement. A proposed Order is attached for the Court's consideration.

Dated: November 8, 2021
Philadelphia, PA

Respectfully submitted,

By: *s/ Jason Conway*

Jason Conway (PA 317113)
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

Gregg I. Shavitz
**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz*
gshavitz@shavitzlaw.com
Camar Jones*
cjones@shavitzlaw.com
Logan A. Pardell*
lpardell@shavitzlaw.com
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Fax: (561) 447-8831

Michael Palitz*
mpalitz@shavitzlaw.com
830 Third Avenue, 5th Floor
New York, NY 10022

Telephone: (800) 616-4000

**LEVIN, SEDRAN & BERMAN**
Daniel C. Levin (PA 80013)*
510 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 592-1000
Fax: (215) 592-4663
dlevin@lfsblaw.com

***Attorneys for Plaintiffs and the Collective Members***

* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that, on November 8, 2021, I caused a true and correct copy of the aforementioned document to be served on all counsel of record in this matter through operation of the Court's CM/ECF system.

*s/ Jason Conway*
Jason Conway